CENTRAL ILLINOIS HARVESTORE, INC., Plaintiff-Appellee, *v.* HARTFORD INSURANCE COMPANY, Defendant-Appellant.

Third District No. 78-106

Opinion filed April 10, 1979.

John E. Cassidy, Jr., of Cassidy, Cassidy, Mueller & Price, of Peoria, for appellant.

Eugene L. White and Phillip B. Lenzini, both of Kavanagh, Scully, Sudow, White and Frederick, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Central Illinois Harvestore, Inc., brought this declaratory judgment action against defendant, Hartford Insurance Co., to resolve a dispute concerning coverage under workmen's compensation insurance issued by defendant to the plaintiff. Whether coverage exists rests upon a determination as to when the policy period commenced. The circuit court of Peoria County granted plaintiff's motion for summary judgment and this appeal followed. The following uncontested facts appear from the pleadings as well as the documents pertaining to the motion for summary judgment.

In December of 1976, plaintiff was informed by its workmen's compensation insurance carrier (Firemen's Fund) that plaintiff's coverage

would be cancelled as of the middle part of January. After being rejected by two other workmen's compensation insurance carriers, plaintiff applied to the Illinois Industrial Commission for a policy of workmen's compensation insurance under the assigned risk plan. (Ill. Rev. Stat. 1975, ch. 73, pars. 1081 through 1091.1.) The application was made on plaintiff's behalf by an insurance agent, James Riley, of Mueller, Riley, McClellan & Assocs. Riley and defendant had previously entered into a written agency agreement, and as will appear, the relationship created by this agreement is central to the issues on appeal.

The Commission assigned the risk to the defendant and a notice of that assignment was sent out on January 12, 1977. On January 19, 1977, the defendant transmitted its proposed policy to Riley and the plaintiff. The correspondence stated:

> "Please send your CERTIFIED CHECK in the amount of $12,770 made payable to 'Hartford', along with a copy of this letter, to the attention of the writer. Upon its receipt, we shall issue your policy for a one year period."

On January 26 Riley received this proposal from defendant and telephoned Ray Garrison, comptroller of the plaintiff corporation, and informed him of the policy as well as the premium amount. Garrison agreed to send plaintiff the check in the amount requested made payable to defendant. Riley told Garrison coverage would be bound as of January 26, 1977. As of January 26, plaintiff had not received its copy of the notification from defendant. In a sworn affidavit in support of plaintiff's motion for summary judgment, Garrison stated that he relied on Riley's representation, as an authorized agent of the defendant, that plaintiff was bound with coverage for workmen's compensation.

On January 27 one of the plaintiff's employees was injured in the course of employment and subsequently filed a claim. On March 14, Riley notified defendant of the claim and on March 23 defendant denied liability, claiming the effective date of the policy was February 11, 1977. Plaintiff then filed a verified complaint requesting a declaratory judgment that defendant provided workmen's compensation coverage on January 27, 1977.

Our consideration of the issues on appeal involves an examination of the authority granted to Riley under the agency agreement and how this authority relates to certain provisions of the Insurance Code and rules of the Illinois Industrial Commission dealing with the assigned risk plan.

Section 3(a) of the Workmen's Compensation or Occupational Diseases Insurance for Rejected Employers Act provides:

> "The Commission shall grant binding authority to a licensed insurance agent upon collection of at least 25 percent of the

premium and immediate notice of binding mailed or submitted to the Commission, and subject to such rules as promulgated by the Commission." (Ill. Rev. Stat. 1977, ch. 73, par. 1083(a).)

Pursuant to this authority the Commission has adopted certain rules and among them are the following in pertinent part.

"Rule 2

[T]he Industrial Commission will designate an insurance carrier which shall calculate the annual premium and notify the employer or licensed agent as to the amount of the annual premium required. On receipt of notice of premium the employer shall forward to the assigned carrier, a certified or cashier's check payable to the assigned carrier at the carrier's address indicated in the assignment letter for the full amount of the premium. The carrier will bind coverage at 12:01 A.M. the first day following receipt of the premium or at a later date if requested.

\* \* \*

Rule 4

(a) A licensed agent is authorized to bind the assigned insurance carrier upon the collection by the licensed agent of 25% of the annual premium required from the employer."

The agency agreement between Riley and defendant was an exhibit to the complaint. It provided that:

"I. AUTHORITY OF AGENT

The Agent is authorized on behalf of the company:

(1) \* \* \* to bind, issue and deliver policies therefore which the Company may from time to time authorize to be issued and delivered."

Defendant argues Riley was not authorized to bind defendant because he was a broker and not an agent. We disagree.

■■ While the cases cited by defendant provide distinctions between broker and agent, they are not particularly applicable here since those cases involve situations where no showing of agency was ever made. (See, e.g., *Tri-City Transportation Co. v. Bituminous Casualty Corp.* (1941), 311 Ill. App. 610, 37 N.E.2d 441.) Here, the existence of an agency relationship was irrefutably established by the written agency agreement between Riley and defendant. Furthermore, the terms of the agreement do not purport to restrict Riley's authority to a particular type of insurance. To the contrary, the agreement expressly allows Riley to orally bind coverage on policies of insurance issued by the defendant without limiting that authority to any specific types of insurance. We believe that Riley had the authority necessary to orally bind coverage on the workmen's compensation insurance policies.

■ The next question is whether the statutes and rules previously set forth preempt any contractual relationship which alters the means by which payment may be made on policies under the assigned risk plan and the effective date thereby determined. While an employer can guarantee coverage on a certain date by complying with the foregoing provisions and the insurer is at liberty to require payment in accordance with these terms if it so chooses, the statutes and rules are silent as to whether it is possible for the insurer and insured to bind coverage in a different manner.

We find no reason why defendant, through its duly authorized agent, is or should be prevented from providing an alternative means of binding coverage. If defendant agrees to forego its rights to payment according to statutory terms and is willing orally to bind coverage upon the insured's promise to submit a check, such is not inconsistent with the statutory scheme nor against any public policy of this State. (See generally *Schumann-Heink v. Folsom* (1927), 328 Ill. 321, 159 N.E. 250.) If anything, public policy encourages such a practice, for it makes workmen's compensation insurance more accessible to employers who need it. Such would seem to be in conformity with the purpose behind the assigned risk plan. The statutes and rules in question are primarily for the benefit of the insured, especially when one considers that the insured is dealing with an unwilling insurer who has been compelled by statute to provide coverage. So long as the pertinent provisions are followed, the insurer cannot deny coverage. This is not to say that the insurer and insured cannot agree to an alternative means of payment and binding coverage, as was the case here.

In its final issue, the defendant challenges the propriety of the court disposing of the case by summary judgment. Without reciting the well-known rules concerning motions for summary judgment, we believe in light of the pleadings and the uncontested facts as set forth by affidavits in support of the motion, there was no genuine issue of material fact and the trial court therefore did not err in granting summary judgment.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, P. J., and STENGEL, J., concur.