GARRISON, Judge.
This is an appeal from a judgment of the district court rendered in accordance with a jury verdict granting damages in the amount of $95,000.00 plus interest and costs, as well as $30,000.00 in attorney’s fees, to plaintiff. Plaintiff sued on a written contract of employment as District Sales Manager with the defendant, Kar Products, Inc. From that judgment, which we affirm, defendant appeals.
Plaintiff’s suit alleged the following:
1. He was terminated without suitable cause, entitling him to 5% commission of all sales within Louisiana and Mississippi for 90 days after his discharge.
2. He had not received his 5% commission on all sales made within his territory during the term of the contract, as specified in the contract.
3. He had been charged $600.00 by the company to reimburse itself for money loaned to a Kar salesman.
*1240 4. He was charged 10% (5% return of his commission plus an additional 5%) when merchandise ordered by customers in his territory was not paid for, whereas the contract specified only that he would return the 5% commission.
He further claimed attorney’s fees, penalties and legal interest.
On appeal, defendant argues that the trier of fact erred in finding that plaintiff was terminated “without suitable cause,” that the jury’s award is excessive, and that the trial court abused its discretion in awarding $80,000.00 as attorney’s fees.
Kar Products argued that Franco was dismissed because of a sharp downturn in sales, personnel problems, personality problems and failure to adhere to company rules and regulations. Franco argued that the company was trying to split his territory because he was making “too much money.” Kar’s own witness, Bruce Stultz, admitted that Kar was trying to split Franco’s territory. Approximately six months prior to plaintiff’s termination, the company informed plaintiff that they wanted him to give up the North Louisiana part of his territory in return for a 2% commission for two to three years. As he was receiving a 5% commission on that territory at the time, plaintiff refused defendant’s offer. Bruce Stultz repeatedly warned plaintiff to accept the offer. This issue is essentially a credibility call by the trier of fact, the jury. We cannot conclude that the trier of fact was manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Franco argued that the 5% commission on all sales within his territory meant all sales exclusive of George Williams’ sale prior to his retirement. Defendant argued that all sales meant all sales exclusive of those made by salesmen not hired on a salary basis, as well as sales by George Williams’ successor. The contract reads as follows:
“(a) A commission equal to five (5%) percent of the net sales on all merchandise sold by the Company and shipped to the States of Louisiana and Mississippi, with the exception of the accounts serviced by George Williams, as previously described hereinabove.” (emphasis supplied)
If Kar intended the interpretation which they argue, they could have easily changed the language “all merchandise sold by the Company" to language clearly expressing that intention. Likewise, Kar could have used the language “George Williams and/or his successors.” Ambiguities in a contract are construed against the party that wrote the contract; hence, these ambiguities were properly construed against Kar.
The question of the 10% or 5% charge-back for unpaid merchandise is likewise a question of contract interpretation. The contract provision reads as follows:
“Any merchandise not paid for by the customer will be charged back to the District Sales Manager on the same basis as the comission (sic) was originally paid.” (emphasis supplied)
While the language “on the same basis” could be subject to multiple interpretations, the burden was on Kar to write a clear and unambiguous contract. Victor E. Solsberry, former Vice-President of National Accounts (Sales) for Kar, testified that Franco should have been charged back 5% or not charged back at all. In light of the evidence presented, we cannot conclude that the trial court erred in finding that Kar Products overcharged plaintiff’s account. Canter v. Koehring Co., supra; Arceneaux v. Domingue, supra.
Turning to the issue of the $600.00 loan, the testimony indicates that it was the policy of Kar Products to make loans to their salesmen from time to time. Due to the erratic flow of income based on commissions, the salesmen’s earnings were a “feast or famine” situation. Accordingly, the company would occasionally make loans to salesmen to tide them through the “lean” months. In conjunction with this policy, it was required that the salesman’s supervisor review the loan request, ascertain and explain the necessity of the loan, and forward the request to the company. We agree with the trier of fact that Mr. Franco did *1241 not agree to become personally liable on the salesman’s debt by acting as a factual investigator on behalf of Kar. Mr. Franco acted like a bank or finance company clerk by accepting information which was then relayed to a higher authority where a loan decision was made. We note that no promissory note, loan agreement, or other legally binding evidence of indebtedness bearing Mr. Kar’s signature as a debtor was produced.
 Kar further argues that the trier of fact clearly abused its discretion by awarding an excessive amount to plaintiff. Kar admits to damages in the amount of $48,804.80 and argues that $15,000.00 severance pay should be credited against that amount. Kar’s admission as to the amount of damages, however, fails to take into consideration other factors, such as his age and ability to gain new employment in light of the contractual restrictions on future employment. Upon review, this court is bound by the standards ennunciated in Coco v. Winston Industries, 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979); and Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). Only upon the appellate court’s independent review of the evidence and testimony presented, coupled with a determination that the lower court clearly abused its “much discretion,” may an appellate court pretermit the prior determination of quantum assessed by the trial court and then reexamine the question of quantum. In the instant appeal, we cannot conclude that a clear abuse of discretion has occurred.
Turning to the issue of severance pay, we can only conclude that in light of the jury’s verdict, the trier of fact meant for the amount awarded to be in addition to the $15,000.00 already paid by defendant. We cannot conclude that this is an erroneous determination because of plaintiff’s argument that the $15,000.00 was the causa (in common law consideration) for additional services rendered by the plaintiff.
Plaintiff introduced a letter from Kar signed by Bruce Stultz addressed to plaintiff and dated November 16, 1978. The November 16 letter confirms a handwritten note dated October 16 and signed by Stultz in which Stultz stated: “The severance pay is based on your efforts to help us with a smooth transition of the district personnel and sales.” The pertinent parts of the November 16 letter are as follows:
“(A) The payments by KAR PRODUCTS, INC. of the severance pay as scheduled above will be contingent on the following procedures being followed by you:
“(a) Your 100% cooperation in turning over the management control to KAR PRODUCTS, INC.
“(b) All equipment of KAR PRODUCTS, INC. returned to my office in Houston within two weeks.
“(c) All giveaways, promotion items, TV stamps supplied to you on the special pay plan of Buckmaster and Dubea and the RAMPCO situation and still in your possession are to be returned to me at my Houston office within the next two weeks.
“(d) You will comply with all provisions of your Kar District Manager’s contract, and in particular to the restrictive covenants therein contained.
“(e) You are to have no contact, either personal or by telephone, with any salesmen employed by KAR PRODUCTS, INC.
“Any violations of the above listed procedures will be taken as cause to discontinue your severance pay agreement.”
Plaintiff testified that Stultz wrote the October 16 note at plaintiff’s request and that plaintiff was to receive the $15,000.00 in return for “not caus(ing) any disturbance and not lead(ing) any of the other men to go with another company and . .. not tell(ing) the reason (for termination) to the other men. ‘As a matter of fact, George, I don’t even want you to talk to the men.’ ” (Tr. p. 135). Stultz testified that he included the monetary terms but not the reasons for the $15,000.00 payment in the October 16 letter. The letter reads as follows:

*1242

*1243 Having thus reviewed the evidence and testimony presented we cannot conclude that the jury was manifestly erroneous in concluding that the amount in question was compensation for additional services in the nature of insuring a smooth transition.Having so found, we cannot conclude that the jury clearly abused its discretion by failing to credit the $15,000.00 against the total amount awarded.
The last issue presented on appeal is the question of attorney’s fees. Both parties stipulated that Illinois law would control the question of attorney’s fees and that the issue of attorney’s fees would be tried solely by the judge instead of by the jury. Neither party, however, stipulated that plaintiff was entitled to attorney’s fees. After examining the issue the trial judge granted attorney’s fees in the amount of $30,000.00.
The Illinois statute allowing attorney’s fees (also called the Attorneys and Counselors Act) provides as follows:
“Whenever a mechanic, artisan, miner, laborer, servant or employee brings suit for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he has brought suit is justly due and owing, and that a demand was made in writing at least 3 days before suit was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of suit.” Ill.Rev.Stat., 1977, Ch. 13, § 13. (emphasis added)
Defendant-appellant argues that plaintiff is not an “employee” under the act and that the demand letter dated February 8, 1979, made demand for an amount in excess of that found due and owing. For the proposition that plaintiff is not an employee, defendant cites an 1894 case, Standard Fashion Co. v. Blake, 51 Ill.App. 233 (1894) and a 1935 case, Buren v. Mercury Press, Inc., 280 Ill.App. 217 (1935). Both cases found that salesmen were not employees. The most recent case on point is Reiss v. El Bauer Chevrolet Co., 96 Ill.App.2d 266, 238 N.E.2d 619 (4th District, 1968). In Reiss several automobile salesmen sued to recover an annual bonus based on their prior year’s sales. The court in Reiss specifically found that salesmen are employees under the Act and are entitled to recover attorney’s fees. While defendant is at liberty to argue that Reiss was poorly or erroneously decided, nonetheless it has not been overruled by the Illinois courts and stands as the most recent and definitive treatment of the question. In applying Illinois law, this court is in agreement with the trial judge’s ruling that salesmen are employees under the Act.[1] .
Turning to the issue of the demand letter, we note that the letter (P-6) reads as follows:
“Dear Sirs:
“This is to advise you that I represent Mr. George Franco in connection with his employment agreement with you of November 28, 1973.
“In violation of that agreement you have failed to remit to Mr. George Franco the commissions due to him for which he was entitled during the course of his employment, on sales made in his territory by salesmen from outside of his territory, particularly from the Arkansas, Tennessee and Texas territories.
“We are herewith requesting from you a print out of all sales made to all businesses in the State of Louisiana and Mississippi from November 28,1973, through February 1, 1979.
“In addition you have terminated Mr. Franco without cause and have failed to remit to him his commission that was due and is still due under the employment contract for the three month period succeeding the termination.
*1244 “In addition during the course of Mr. Franco’s employment numerous salesmen were put on the pay plan calling for basic salary plus commission and during the periods of which the pay plans were in existence for the various salesmen the 5% commission due to Mr. Franco as district manager was not paid to him by you. “During the course of his employment also in instances where customers have defaulted on the payment of their account instead of charging back 5% commission you have seen fit to illegally charge him back 10% commission.
“Finally, in 1978, you charged Mr. Franco the sum of $600.00 for a bad loan made by the company to Mr. Frank Lovette for which we are hereby requesting reimbursement.
“It is also our understanding the law of Illinois provides for attorney fees for your breach of this employment contract. “We are herewith putting you on demand to pay our damages which we estimate to be $175,000.00 and we are herewith requesting also that you furnish to us an accounting of the commissions that Mr. Franco was entitled to during the course of his employment and for the 90 days after his termination as well as the other matters referred to herein.
“If we do not hear from you in response to this letter within 10 days we will proceed to file suit to recover all losses.”
As shown by the above, the letter at issue clearly sought to notify defendant of the possibility of future legal action and states on several occasions that the figure is only an estimated amount, as the true figure is ascertainable only from records in the defendant’s possession. While in most cases the amount at issue would be the most easily ascertainable fact, in a case such as this, where the amount at issue lies at the very heart of the suit, it would be unreasonable to require the plaintiff to “consult a crystal ball” for an amount. It is obvious that the intent of the statute is to compel the disclosure of the true amount due, but consider the case where the true amount due is unknown. It is an elementary rule of statutory construction that where two interpretations of a statute are available, one which is an unreasonable derogation of the intent of the statute and one which reasonably upholds the intent of the statute, the court is bound to uphold the intent of the statute by applying the latter interpretation. Having so concluded, we find that the trial judge did not commit an error of law in awarding attorney’s fees to plaintiff.
Lastly, defendant argues that the trial judge clearly abused his discretion in the amount awarded. We do not agree. The trial judge devoted four pages of the transcript to his oral reasons for the attorney's fees award. In so doing, he touched upon every element examined by a court in awarding attorney’s fees:
“(1) the ultimate result obtained; (2) responsibility incurred; (3) the importance of the litigation; (4) the amount involved; (5) the extent and character of the labor performed; (6) the legal knowledge and attainment and skill of the attorney; (7) the number of appearances made; (8) the intricacies of the facts and law involved; (9) the diligence and skill of counsel; (10) the court’s own knowledge; and (11) the ability of the party liable to pay.”
Guillory v. Guillory, 339 So.2d 529 (La.App. 4th Cir., 1976).
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.
GULOTTA, J., concurs.

. Defendant also cites Lites v. Jackson, 70 Ill.App.3d 370, 26 Ill.Dec. 288, 387 N.E.2d 1118 (1st District, 1979). In Lites the First District found that the Clerk of the Village of Maywood, an elected public offícial, was not an employee. We find that Lites has no bearing on the question of a salesman.