LEMMON, Judge.
In this action plaintiff, an employee discharged by defendant employer on November 4, 1976, seeks to recover a bonus he would admittedly have been entitled to under the terms of the company’s Incentive Payment Plan if he had worked through the end of the fiscal year on November 30. Defendant has appealed from a judgment, rendered after a trial on the merits, which awarded the bonus to plaintiff.
At the time of his discharge plaintiff had been employed by defendant for nine years and had been the store manager at defendant’s retail and commercial store in New Orleans for over five years. While there was no written document outlining the overall employment agreement, plaintiff admittedly was not hired for a fixed period of time. However, there was a written document covering the Incentive Payment Plan, which was a bonus plan for key employees. Under the plan these supervisory and administrative employees, who were paid a fixed salary and did not receive commissions on sales as did the salesmen, could earn additional wages based on the particular store’s quota achievement. The plan’s eligibility requirements included the following pertinent provision:
“He (the employee) must, at the time of the Bonus payment, be in the employment of the company or an affiliate thereof. (Note: A customer, dealer or consumer is not considered an affiliate.) The employee is eligible for Bonus payment if he: (1) is retired in conjunction with Company Retirement Program; (2) is in the Armed Forces of the United States under a military leave of absence from the Company or affiliate thereof; or, (3) is on an approved maternity leave of absence from the Company or affiliate thereof.”
Defendant had previously established similar plans, and plaintiff had earned bonuses during four of six previous years. The current incentive plan was effective for the 12 month period ending November 30, 1976.[1]
On Saturday, October 30, 1976 the store did not open for business, because plaintiff did not show up with the key, and three employees waited outside for an hour before finally leaving. Defendant discharged plaintiff five days later and also refused to pay him any bonus, reasoning that he was •not in the company’s employment at the time of the bonus payment.
The trial court instructed the jury that defendant could discharge plaintiff for any reason, but that if the discharge was without fault on plaintiff’s part so that plaintiff was prevented through no fault of his own from meeting the eligibility requirement of the Incentive Payment Plan, he was entitled to his proportionate share of the bonus. This instruction was based on the holding of Morse v. J. Ray McDermott & Co., 344 So.2d 1353 (La.1976) that if an employer agrees to pay a bonus on certain conditions and prevents the employee who is bound to perform the condition from doing so, without fault on the.part of the employee, the condition is considered as fulfilled. See also C.C. art. 2040.
The Morse case involved an employee’s termination for reasons beyond the control of the employee. Since we conclude the record in this case does not support the jury’s apparent finding that plaintiff was discharged without fault on his part, the Morse case is not controlling.[2]
*1264 Defendant’s district manager of retail stores, who had been plaintiff’s immediate superior since May 1, 1976, evaluated plaintiff as a capable employee whose performance was declining because he did not devote the required amount of time to management of the store and did not have a proper working relationship with his subordinates. Although the store’s profit record for that fiscal year had increased above the previous year, he stated (without supporting documentary evidence) that the store’s sales, after a great start, had declined monthly during his tenure. He added that he discussed plaintiff’s situation with the regional manager immediately after plaintiff failed to open the store on the last working day in October and fired plaintiff as soon as the regional manager obtained higher approval to do so.
The former district manager stated a similar evaluation, and a salesman in that store described declining morale there, relating an incident in which he had to contact the regional manager in order to get credit for an account for which plaintiff claimed entitlement.
On the other hand, plaintiff contended he was fired without cause at that particular time because the district manager desired to deprive him of his bonus. Pointing out that the store’s sales record was better in most respects in 1976 than in 1975, he admitted considerable problems in 1976, but blamed them on the termination of the office manager’s position (when a complicated computer system was installed without adequate training) and on the service manager’s three-month absence due to illness. He further noted that there were no written complaints about his performance prior to his firing. While he admitted he was responsible to have the store opened daily, he emphasized he had failed only on the one occasion. He also admitted, however, he had caused substantial damage to a company truck in 1975 while using it to haul bricks in the construction of his home, although use of vehicles for personal missions was strictly prohibited.
On this record the jury perhaps accepted plaintiff’s factual version of the various occurrences when the versions conflicted, but even if all of the factual evidence favorable to plaintiff is accepted, the jury erred as a matter of law in its apparent determination that plaintiff was discharged without just cause attributable to plaintiff.
Either plaintiff’s use of the truck in deliberate disobedience of company rules or his failure to open the store on October 30 was a clearly sufficient ground for discharge. The latter incident, which occurred just before the termination, was obviously the most important.
The store was to be opened until noon, the normal Saturday schedule. Plaintiff did not return to New Orleans until about 2:00 p. m., and he immediately called his district manager in Memphis.
Plaintiff explained in testimony before the jury that he and a female companion he had met at a party that Friday night had driven out of town in her car and had a flat tire several hours before dawn. Because the spare was also flat, he had to roll the tire three or four miles to a service station and had to wait several hours for someone to repair the tire. He did not inquire if there wás a telephone at the station, because none of the three employees who had store keys was scheduled to work that day, and he did not have the telephone numbers of the employees who were scheduled to work.
Even if plaintiff’s version of the occurrence is accepted, there is simply no justification for his failure to make some effort to have the store opened. The flat tire occurred only about 50 miles from New Orleans. Plaintiff did not seek a telephone, either at the service station or at other places in the area. His excuse that he did not know the telephone numbers of the employees scheduled to work ignores the obvious possibility of obtaining the numbers *1265 of these employees (or of other employees who had keys and could have opened the store, though not scheduled to work) through directory assistance. Numerous other reasonable courses of action come to mind, but the one thing obvious from the overall circumstances is that a responsible supervisory employee desirous of furthering his employer’s interest would at least have attempted to do something. Plaintiff did nothing, and his immediate firing cannot reasonably be said to be without just cause.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that plaintiff’s suit be dismissed at his cost.

REVERSED AND RENDERED.

GULOTTA and GARRISON, JJ., dissent and assign reasons.

. At the end of that fiscal year the store which plaintiff had managed was eligible for a bonus of $10,205.00, of which $7,143.50 would have been his share, if he was eligible. The average bonus that year for defendant’s 220 stores was $6,500.00.

. Further distinction is that the Morse case involved a forfeiture of earned 'compensation payable over an extended period, and the court held it was against public policy to require an employee to continue in employment into the future as a condition for recovery of remuneration for services already performed.
In the present case the fiscal year for which the bonus was to be awarded had not ended at the time of plaintiffs discharge. Nevertheless, because of the result we reach on the issue of *1264 discharge without fault, we need not decide whether this other distinction would require a different result from that reached in the Morse case.