408 So.2d 984 (1981)
Walter RUSH, Plaintiff-Appellant,
v.
RYAN CHEVROLET, INC., Defendant-Appellee.
No. 14729.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*985 Harvey R. Lexing, Monroe, for plaintiff-appellant.
Hudson, Potts & Bernstein by Robert C. Downing, Monroe, for defendant-appellee.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
PRICE, Judge.
Plaintiff, Walter Rush, instituted this suit against defendant, Ryan Chevrolet, Inc., his former employer, for penalties and attorney fees because of defendant's failure to pay wages within three days following termination of his employment as required by La.R.S. 23:631-632. From a judgment denying him this relief, plaintiff appeals. We reverse.
The record shows that plaintiff's employment was terminated on Friday, November 7, 1980. At 10:30 a. m. on that day, he went to the office of Jim Myrick, defendant's business manager, and requested his check. Since this was a regular payroll day, plaintiff was told to return at 5:00 that afternoon, the normal time when the checks were ready for distribution. At this time, plaintiff refused to sign an employee termination statement which listed the reasons for his termination. He requested his check from Myrick at 2:30 p. m. and was told again to return at 5:00 p. m. Plaintiff testified he returned at 5:00 and was told by Myrick that he could not have his check because of his refusal to sign the termination statement. This testimony was disputed by Myrick, who testified plaintiff never returned at 5:00 that day for his check.
On Monday, November 10, 1980, plaintiff contacted Rodney Sanders, an official of the U. S. Department of Labor, Wage and Hour Division, concerning defendant's refusal to pay him his wages. Sanders testified that he called Myrick who told him that plaintiff's check was available for plaintiff to pick up, with no precondition that he sign a termination statement. Plaintiff testified he went directly to Myrick's office and that Myrick again refused to give him his check because of plaintiff's refusal to sign the termination statement. Myrick denied seeing plaintiff on this date.
Myrick testified that because plaintiff did not return to get his check, he mailed it to plaintiff on November 17, 1980. However, a postal employee, after examining the envelope the check was delivered in, testified that the postmark indicated it was actually mailed on November 24, 1980. Plaintiff testified he received the check around Thanksgiving, which was November 27, 1980. On the reverse side of the check, the following clause appears:
By my endorsement of this check, I hereby acknowledge receipt of $217.75 in full payment of all wages and other indebtedness due me, and release and forever discharge the employer from any and all claims of every kind.
Because he believed this statement might affect his right to the sum of $7,400 he had in a company profit sharing fund, plaintiff did not cash the check.
*986 The trial court ruled that plaintiff failed to establish by a preponderance of evidence that defendant failed to have the check available for him at the designated time. The court found that plaintiff's complaint directed to the release statement on the back of the check was inconsequential because he could have rendered the clause ineffective by striking through it.
The principal issue on this appeal is whether defendant complied with its duty under La.R.S. 23:631, and if it did not so comply, whether penalties and attorney fees provided for in La.R.S. 23:632 are warranted. La.R.S. 23:631 reads as follows:
Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
As the trial court noted, there is conflicting testimony concerning plaintiff's appearances at the instructed time of 5:00 p. m. on his termination date and on the following Monday. However, resolution of the issue in this case is not dependent on whose testimony is correct. The evidence clearly shows that on the two occasions on November 7, 1980, when he demanded his check, plaintiff was told receipt of the check was contingent upon signing a company form releasing all rights against the company. Plaintiff reasonably believed that by signing the release form, he would be forfeiting his right to withdraw his money from the profit sharing fund. Although the profit sharing fund was controlled by another corporate entity set up by defendant for this special purpose, it could reasonably be assumed that plaintiff did not understand this technical arrangement. In addition plaintiff could not be expected to know what effect this release might have upon future claims for unemployment compensation. A similar situation existed in Duhon v. Prof. Erney's Music Company, Inc., 328 So.2d 788 (La.App. 3d Cir. 1976). There the employer refused to pay a discharged employee her final wages because of her refusal to sign a "Removal from Payroll" form. The court, in holding that the employer's actions violated La.R.S. 23:631, stated that the statute did not permit an employer's "desires, conveniences, or procedures to condition the payment of wages." We hold that defendant's conditioning payment of wages upon signing such release forms in the instant case violated La.R.S. 23:631.
We next consider whether defendant is liable for penalties and attorney fees as set forth in La.R.S. 23:632, which provides:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
*987 Defendant contends it acted reasonably in making plaintiff's check available to him as promised, and that its mailing of the check after plaintiff failed to pick it up was in keeping with its customary business practices concerning discharged employees. Plaintiff further contends this is an equitable justification which renders penalties and attorney fees inapplicable. See Carey v. Orleans, Ins. Co., 337 So.2d 317 (La.App. 4th Cir. 1976).
The reason and spirit underlying La.R.S. 23:632 is to ensure that an employer promptly pays his discharged employee all wages due him. Soday v. Mall Snacks Inc., 374 So.2d 138 (La.App. 1st Cir. 1979). We do not feel that under the circumstances of this case defendant has acted in furtherance of this policy. Although there is a dispute in the record concerning the date defendant mailed plaintiff's check to him, we find the preponderance of the evidence shows it was not mailed until November 24, 1980. Therefore, the mailing of the check was not within the three-day period prescribed by La.R.S. 23:631 and did not absolve defendant from the penal provisions of the statute. Furthermore, the placing of the release clause on the back of the check which was mailed to plaintiff was not an unconditional payment of wages and did not constitute a tender. As discussed heretofore, plaintiff acted reasonably in refusing to endorse and negotiate the check under the circumstances. We find that the imposition of penalties and an award of attorney fees are warranted in this case.
The final issue for our determination is calculation of penalty wages and attorney fees. It is clear that plaintiff made at least two demands for his check on November 7, 1980. This is sufficient to constitute a demand under the statute for the determination of the amount of penalties due. Simon v. Crowley Industries, Inc., 287 So.2d 549 (La.App. 3d Cir. 1973). As there has been no unconditional tender of wages through the present date, plaintiff is entitled to the maximum period of ninety days provided by La.R.S. 23:632. Plaintiff earned $217.75 weekly or $43.55 daily at the time of his discharge by defendant. He is therefore entitled to penalty wages in the sum of $3,919.50. He is further entitled to attorney fees. Considering the minimum amount of time required in the trial of this proceeding in the district court and briefing on appeal, we find the sum of $750 is reasonable for attorney fees.
For the reasons assigned, the judgment of the trial court is reversed and judgment is hereby rendered in favor of plaintiff, Walter Rush, and against defendant, Ryan Chevrolet, Inc., for the sum of $169.26 for past due wages; for the sum of $3,919.50 as penalty wages; and for the sum of $750 for attorney fees. It is further ordered that interest at the legal rate to run from date of judicial demand be paid on the past due wages, and that payment of the judgment for past due wages be conditioned on the return of the check previously issued to defendant.
Costs of these proceedings, including this appeal, are assessed to defendant.