422 So.2d 503 (1982)
Sharon HESS
v.
Julien PEMBO d.b.a. Pembo and Associates.
No. 13244.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
Rehearing Denied December 21, 1982.
*504 Clement F. Perschall, Jr., New Orleans, for plaintiff-appellant.
Michael A. Britt, Leon A. Crist, New Orleans, for defendant-appellee.
Before BARRY, LOBRANO and WILLIAMS, JJ.
BARRY, Judge.
Plaintiff sued her former employer, Pembo and Associates, for unpaid commissions, as well as penalties and attorney's fees, allegedly due under LSA-R.S. 23:632 within three days after she quit work. The trial court awarded plaintiff $1,629.69 in commissions, denied her claim for penalties, and awarded $350.00 attorney's fees. Plaintiff appeals the amount of commissions awarded, the denial of penalties, and the amount of attorney's fees.

I. CALCULATION OF THE AMOUNT DUE PLAINTIFF FOR UNPAID COMMISSIONS
Plaintiff worked as a personnel counselor with defendant's employment agency from 1979 through July 17, 1980. Her job entailed the placement of applicants for which *505 she received commissions in accordance with the agency's procedures, based upon the placed employee's salary and various other factors. At trial, plaintiff introduced evidence regarding commissions for certain placements made during the months preceding her voluntary termination of employment. None of those commissions had been paid at the time of trial, and several (not all) of the claimed amounts were contested by defendant. The discrepancy between plaintiff's and defendant's accountings of the amount due derives from a fact controversy concerning the parties' agreements as to the commissions applicable to certain placements by plaintiff.
Plaintiff and defendant were the only witnesses at trial. Both testified plaintiff did not sign a written employment contract, but that she was furnished a booklet describing the agency's procedures and policies as to the percentages and terms of placement commissions, draws and other consultant benefits. Plaintiff and defendant agreed that the commission scale and other benefits were explained to her in some detail, either by defendant or by the office manager, at the commencement of her employment and on subsequent occasions.
The first disputed commission involves plaintiff's placement of an employee with Latter & Blum, a regular client of defendant's employment agency. The applicant placed by plaintiff replaced another employee who had quit her job shortly after being placed by a different counselor from defendant's agency. Latter & Blum had already been invoiced for and made partial payment of the agency's fee for the former employee, and was given a credit for that amount toward the placement fee of the new employee. Defendant Pembo, owner of the agency, testified plaintiff had specifically agreed to accept a commission for the replacement employee based on only the additional amount billed to that client, which was $504.00. Plaintiff testified that, although she was aware that Latter & Blum had been billed for $504.00 and was to receive a $720.00 credit towards the new employee's fee, she expected her commission to be based on the amount previously billed plus the additional $504.00.
After reviewing the invoices and accounting ledger and observing both witnesses, the Trial Judge said, and we agree, that plaintiff accepted a reduced commission:
... the court believes that plaintiff was aware of a previous credit due on the account and took over the account subject to the credit. The amount actually billed to Latter and Blum was $540.00 [sic], not $1,012.00. The court further believes that had there been any intention on the part of the defendant to pay plaintiff for the full amount of the placement, some notation would have [sic] made on the records, but this was not done. Based on the lack of any written evidence and the testimony of the defendant, this court believes that a commission was to be earned only on the sum of $540.00 [sic].
Plaintiff also questions a deduction of $312.00 which had initially been credited to plaintiff upon her placement of an applicant with Central Savings & Loan, but was deducted from her account when the employee left and the customer was credited for the full fee. Plaintiff testified she was unaware of a "charge-back" policy upon a placed employee's voluntary termination. Defendant stated he recalled discussing the agency's charge-back policy within the first few weeks of plaintiff's employment when he reviewed the employment contract with her. Defendant further testified both his wife and office manager also "most probably" reviewed this procedure with plaintiff. Defendant explained that when a counselor works with an established customer of the agency and a placement terminates, the same counselor would generally procure a replacement employee and would thus not lose the fee. The trial court chose to believe defendant's testimony regarding plaintiff's knowledge of and acquiescence in the charge-back policy, and we find no error in that fact-finding.
Plaintiff also argues that defendant's "charge-back" policy is unenforceable *506 as a matter of law because it is arbitrary, indefinite and ambiguous and plaintiff could not have freely consented as a term of her employment.
According to the testimony of both parties, each agency client had a "guaranty period" of from 30-90 days during which it received an automatic refund or credit if a placed employee left; defendant testified that, when he felt it was necessary to retain a valued client, he authorized such credits (with corresponding commission deductions) several months after the set guaranty period had elapsed. Since we have found plaintiff was aware of this "charge-back" policy, and it appears during her employment plaintiff also had an interest in maintaining good relations with clients, the policy in question is not so arbitrary or ambiguous as to be deemed a legal nullity.
The final disputed item regarding plaintiff's commissions involves a deduction of a 10% "house fee" by defendant in connection with plaintiff's placement of an employee at DePaul Hospital. According to defendant, such "house fees" were part of the agency's established commission structure for placements which resulted from yellow pages advertising by the agency or on which "the job order is an account of the company when it's given to [an employment counselor]." Defendant testified that the various "house" and referral fees were thoroughly explained to plaintiff when she began working for defendant. Although plaintiff testified she was unaware of any commission structure other than the straight sliding scale commission for each quarter, the ledgers and invoices in the record indicate plaintiff was familiar with and participated in split commissions and referral fees on several accounts during her employment. The trial court's finding on this factual dispute is entitled to great weight and will not be disturbed.
The other commission items awarded by the court were not challenged by either party on appeal. In fact, the amount awarded by the trial court was the exact amount defendant conceded at trial he owed plaintiff.
Accordingly, we affirm the lower court's judgment awarding plaintiff $1,629.69 in commissions from defendant.

II. RECOVERY OF PENALTIES UNDER LSA-R.S. 23:632
Plaintiff's second specification of error is that the trial court erred in denying penalties under LSA-R.S. 23:632:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
That statute must be read in conjunction with 23:631, which provides:
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment....
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.
*507 The undisputed evidence established plaintiff was paid a monthly guaranteed "draw" of $750.00, which was credited against commissions payable each month. The commissions were computed on a sliding scale, with the percentage increasing with each billing of $6,000 within a given quarter. The commissions were not paid until the "guaranty period" of from 30 to 90 days, depending upon the client, had expired.
Plaintiff left defendant's employment agency, without notice, on 7/17/80. The next day, she telephoned defendant and demanded immediate payment of all commissions owed her. Defendant responded that he would send her a check 60 days after the last guaranty period for the commissions due her had elapsed. Plaintiff made another demand a week later, and defendant reiterated his intention of withholding all payments until 60 days after the expiration of the last applicable guaranty period. Plaintiff's counsel sent defendant a letter on 8/27/80 which demanded over $5,000 in commissions, penalties and attorney's fees. Defendant made no tender of any payments following the demand letter, and plaintiff filed this suit on 10/2/80. At trial on January 12, 1982, defendant had still not paid plaintiff any of the commissions due her, nor had he deposited any sums in the court registry.
Defendant testified when plaintiff left his employment on July 17, 1980, "8 out of 9" guaranty periods were still open. Defendant conceded that the guaranty period for at least one placement, at Century National Bank, had expired on July 9, 1980, before plaintiff left his employment. Defendant also admitted that the latest guaranty period among all those in dispute would have been December, 1980, that he would have waited an additional 60 days thereafter before making any payments to plaintiff, and that he made no attempt to pay plaintiff even the uncontested commissions at that time because the matter was already in litigation. The record does indicate that, on several occasions after suit was filed, defendant made offers to "settle" the matter for $1,229.25, but acceptance of such an offer was conditioned on plaintiff's release of all further claims against defendant.
The trial court ruled that, because there was a genuine dispute as to several of the commissions sought, defendant's refusal to pay plaintiff's commissions was not arbitrary or capricious, and thus no penalties were due. We reverse, finding that a legitimate dispute as to some of the commissions due plaintiff did not excuse defendant's failure "to pay the undisputed portion of the amount due as provided in Subsection A of [LSA-R.S. 23:631]," subject to the sanctions mandated by 23:632.
Defendant concedes that the term "wages," as used in LSA-R.S. 23:631, includes commission payments due to an employee in plaintiff's position. Stell v. L.V. Caylor, 223 So.2d 423 (La.App. 3rd Cir. 1969); Agnelly v. Lauricella, 383 So.2d 813 (La.App. 4th Cir.1980); Rubenstein Bros. v. LaForte, 320 So.2d 303 (La.App. 4th Cir. 1975); Nolfo v. Landeche, 339 So.2d 1331 (La.App. 1st Cir.1976). Defendant contends, however, that the dispute concerning several of the claimed commissions, and the fact that most of the guaranty periods had not expired at the time of plaintiff's demand, constitute "equitable justification" for defendant's failure to make payments within the statutory 3-day period.
This court recognizes that certain "equitable justifications," such as set-offs or debts owed the employer by the employee, will defeat the imposition of such statutory penalties. None of the cited cases, however, involved a situation like the instant case, in which an employer conceded that he owed certain commissions to a former employee at the time she left his employment, admitted that he owed additional commissions payable within a few months thereafter, and yet refused to make any payments to the employee for over a year after all uncontested commissions were due.
Defendant argues that his settlement offers, during the course of the litigation, establish his good faith and reasonable *508 behavior. Our jurisprudence holds, however, that in order to avoid the statutory penalties, an employer's tender of wages must be unconditional, and cannot be contingent upon the employee's execution of a release or compromise settlement. Rush v. Ryan Chevrolet, 408 So.2d 984 (La.App. 2d Cir.1981); Duhon v. Prof. Erny's Music Co., Inc., 328 So.2d 788 (La.App. 3d Cir.1976). Thus, we find as a matter of law defendant's refusal to pay plaintiff any of the commissions due her constituted bad faith and subjects defendant to the penalties provided in LSA-R.S. 23:632. As plaintiff's "wages" were her placement commissions, which fluctuated monthly, we fix the penalties at three months of plaintiff's guaranteed minimum salary or draw, for a total of $2,250.00.

III. REASONABLENESS OF THE ATTORNEY'S FEE AWARDED
Under LSA-R.S. 23:632, the court shall award "(r)easonable attorney fees ... in the event a well-founded suit for any unpaid wages whatsoever be filed ... by the employee after three days shall have elapsed from time of making the first demand following discharge or resignation." This suit was "well-founded" and plaintiff has recovered $3,879.69, exclusive of costs and attorney's fees.
The lower court awarded plaintiff only $350 in attorney's fees. While the trial court is afforded great discretion in fixing such awards, we feel the award was grossly inadequate in view of the time spent by plaintiff's attorney in preparing and trying this case, the results obtained, the amounts awarded in similar cases, and the purpose of the statute to encourage workers to sue for unpaid wages and to motivate attorneys to prosecute such suits.
Plaintiff's attorney introduced his time records reflecting over 60 hours of work in connection with this case. In addition to the hours spent in preparation of pleadings, discovery, review of invoices and accounting sheets, and conferences, plaintiff's counsel expended a great deal of time in procuring the appointment of a special process server and, ultimately, a curator ad hoc to accept service on defendant, who purposely evaded service. It is evident from his handling of the trial in this case and the quality of his appellate brief that plaintiff's attorney employed a great amount of skill and effort in the preparation for trial and in this appeal.
A survey of recent attorney's fee awards involving similar amounts shows that in Pace v. Parker Drilling Co. & Subsidiaries, 382 So.2d 988 (La.App. 1st Cir.1980), plaintiff was awarded $1,500.00 attorney's fees for the recovery of $1,177.60 in unpaid wages. In Franco v. Kar Products, Inc., 409 So.2d 1238 (La.App. 4th Cir.1982) this Court awarded $30,000 attorney's fees in connection with a $90,000 award of past-due wages. The Third Circuit assessed $750.00 attorney's fees against an employer who was cast for only $490.36 in overdue wages and fees in Powell v. Flotation Services, Inc., 413 So.2d 276 (La.App. 3d Cir.1982). In Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978) an attorney's fee of $750.00 was awarded in connection with the recovery of a mere $161.93 in past-due wages. Defendant points to this Court's award of $350.00 attorney's fees in Rubenstein Bros. v. LaForte, supra. We note, however, that that decision involved only $188.40 in unpaid wages and was rendered over seven years ago. In Agnelly v. Lauricella, supra, cited by defendant for the "sound discretion" of the trial court to fix attorney's fees, this court awarded $2,150.00 in attorney's fees for recovery of $7,352.29 in unpaid commissions.
We believe the Trial Judge's low award was influenced by his finding that defendant was not in bad faith and did not owe statutory penalties. The colloquy between the Trial Judge and counsel concerning the hours spent by plaintiff's attorney before commission guaranty periods had expired suggests the Trial Judge may have disregarded or discounted the hours spent by plaintiff's attorney prior to December, 1980, when the last guaranty period elapsed. As we have found plaintiff was owed some commissions at the time she left defendant's agency, and defendant was in violation *509 of the statute from the time of plaintiff's initial demand, a proper measure of plaintiff's attorney's fees should reflect the total amount of time spent by her attorney on this case. We find that an award of $750.00 for pretrial and trial work, and an additional $750.00 for preparation and argument on appeal is appropriate.
Accordingly, for the foregoing reasons, the judgment of the district court awarding plaintiff $1,629.69 in commissions is affirmed. That portion of the judgment awarding plaintiff $350.00 attorney's fees is hereby amended and the award is increased to $1,500.00. That portion of the judgment denying plaintiff penalties under LSA-R.S. 23:632 is reversed and set aside and judgment is hereby rendered in plaintiff's favor and against defendant in the amount of $2,250.00 for statutory penalties. Defendant to pay all costs.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART.