KLEES, Judge.
The plaintiff, Huey G. Hinton, a former employee of Owensby and Kritikos, Inc., filed suit against the company and its president to recover sums allegedly owed to him under the company’s incentive compensation program. The defendants denied liability for the payment of any sums credited to the plaintiff under the incentive compensation program.
A jury trial was held, and on defendant’s motion, a directed verdict was granted dismissing the plaintiff’s ease against both defendants. It is from this judgment that the plaintiff now appeals, contending that the trial judge erred in granting the defendant’s motion for a directed verdict.
FACTS
The plaintiff, Huey G. Hinton, was initially employed by the defendant, Owensby & Kritikos, Inc., in February, 1972. He worked for the defendant as a visual inspector for approximately five months.
The plaintiff voluntarily left the company in July, 1972, however, he was rehired in June of 1974 as a supervisor of visual inspection services. At that time, the plaintiff entered into a written work agreement with the defendant, effective June 24, 1974. The plaintiff worked under that agreement *927 until he was promoted to manager of operations. Then, another agreement, effective June 1,1976, was executed by the parties to replace the earlier one. Except for the amount of compensation and the job description, the latter agreement was similar in terms and conditions to the earlier agreement signed by the plaintiff.
The 1976 work agreement provided for an incentive program whereby the plaintiff would receive, as part of his compensation, one per cent of the net volume of annual business generated by two branches of the company. The agreement also provided that the incentive payments were based on a business year from November 1 through October 31, payable on December 15.
Article V, paragraph F of the agreement stated:
“Compensation generated by the Incentive Program for any fraction of a year will not be paid except at the direction of the Board of Directors.”
Around October, 1978, the plaintiff was promoted from manager of operations to vice-president of operations. His base salary was increased from $19,000 to $20,000 a year. At this time, no new work agreement was executed between the plaintiff and Owensby & Kritikos.
Later, because of personal financial reasons, the plaintiff requested that his base salary be increased and his incentive program percentage be decreased. The defendant accommodated the plaintiff. Effective December 1, 1979, the plaintiff’s base salary was raised from $20,000 to $24,-000 a year and the incentive program percentage was decreased from 1% to 0.9%. Also in 1979, the corporation’s fiscal year and incentive program were changed from an October 31 closing date to a September 30 closing date.
After the plaintiff’s promotion to vice-president, he was paid incentive compensation of $20,724.79 on December 15,1978 and $22,555.39 on December 15, 1979.
On July 24,1980, the plaintiff was terminated from his employment with Owensby & Kritikos. The company alleged that the plaintiff had not been, acting in the best interest of the corporation. In particular, the defendant alleged that the plaintiff, while employed as an officer of the company, attempted to persuade co-employees to work for a competitor company which the plaintiff intended to form. In addition, the company contended that the plaintiff sought to persuade a potential customer of Owensby & Kritikos to send business to the company plaintiff intended to form.
On August 26, 1980, Mr. Kritikos, the President of Owensby & Kritikos, sent written notice to the plaintiff confirming his termination of employment. On September 12, 1980, the plaintiff demanded payment from the corporation of all incentive credits earned under the incentive program. The defendant refused to pay the credits, citing Article V, paragraph F of the 1976 work agreement as the reason. The plaintiff then filed this suit to recover any amounts owed to him under the Incentive Program.
DIRECTED VERDICT
The granting of a directed verdict in a civil case tried before a jury is governed by Paragraph A of LSA-C.C.P. art. 1810, which reads as follows:
“A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict, which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.”
However, LSA-C.C.P. art. 1810 does not provide the standard to be used in considering a motion for a directed verdict. That standard has been supplied by the jurisprudence. In Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), the court stated:
*928 “[The statute allows] the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict.”
The court, in Campbell, further stated that the standard of proof is to be based on the Federal standard and cites the language in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) in enunciating the state standard to be used:
“On motion for directed verdict and for judgment notwithstanding the verdict that Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.”
As explained in Campbell, the court must view and interpret the facts in the light most favorable to the plaintiff. Applying this standard to the present case, we conclude that the trial court did not err in granting a directed verdict in favor of the defendants.
Seifert v. General Tire & Rubber Co., 381 So.2d 1262 (La.App. 4th Cir.1980) supports defendants’ position.
Seifert had been employed by General Tire and Rubber Company for nine years and had been a store manager for over five years. On October 30, 1976, he failed to show up with the key to open the store, and three employees waited outside for an hour before finally leaving. Shortly thereafter, the defendant discharged Seifert. The company also refused to pay him any compensation under its incentive payment plan because he was not employed on November 30, 1976, the end of the fiscal year.
On appeal, this court found that the plaintiff was terminated for cause and held that his failure to open the store on October 20th was clearly sufficient ground for discharge. The court denied Seifert any incentive compensation primarily based on the fact that he was discharged for cause prior to the end of the fiscal year.
The facts in Seifert are similar to those in the present case. Hinton also was discharged prior to the end of his company’s fiscal year. Furthermore, the record strongly indicates that the company had just cause for his dismissal. Mr. Hinton admitted that he had contacted key co-employees during company time about the possibility of working for him if he formed a competing company. Additionally, Mr. Hinton admitted that he sought to persuade a potential customer of the defendant to send business to him if he formed a competing company. Based on these facts, it is clear that the defendant had good cause to terminate the employment of Mr. Hinton.
In Seifert, supra, this court held that the Supreme Court case of Morse v. J. Ray Me Dermott & Co., 344 So.2d 1353 (La.1976) is not controlling in situations where the individual was discharged because of fault on his part. Since the actions of the plaintiff clearly evidence fault on his part, reliance on Morse by appellants is misplaced in light of this court’s distinction in Seifert.
Defendants’ arguments are further supported by Copeland v. Gordon Jewelry Corporation, 288 So.2d 404 (La.App. 4th Cir.1974), writ refused, 290 So.2d 911 (La.1974). There the plaintiff’s employment was terminated 21 days short of the anniversary date for the exercise of stock options. The plaintiff’s work agreement specifically stated that the employee must be in the employ of the defendant in order to exercise the options. Under these facts, even though the plaintiff was apparently not discharged for fault on his part, the court held that the plaintiff was not deprived of any rights.
*929 The Seifert ease, while supporting the position of the defendants, ignores a fairly recent case from the Fourth Circuit which supports the plaintiffs argument. In Pender v. Power Structures, Inc., 359 So.2d 1321 (La.App. 4th Cir.1978), an employment contract obligated the employer to pay bonuses to certain employees based on profits earned by the employer. The bonuses were calculated quarterly and payable within thirty days of the end of the bonus period, contingent upon the employee being employed at the time of payment.
The last quarter of the employer’s fiscal year ended on October 31 and the employees were terminated from their employment the next work day (before any bonuses were paid) because they were planning to begin their own business in competition with their employer. Notwithstanding their dismissal for cause, the court awarded the employees their bonuses under the contract.
The court held that the bonus payments were part of the employees’ bargained for compensation for services rendered. It further held that the employees could not be denied the compensation because of their failure to work for the thirty days beyond the bonus period, citing LSA-R.S. 23:634 as authority for the nullification of the thirty day requirement.
LSA-R.S. 23:634 states:
“No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.”
The present case is similar to Pender, supra, because the plaintiff, Mr. Hinton, was similarly discharged for allegedly planning to begin his own business in competition with his employer. However, we distinguish Pender from the present case. In Pender, the employees were still employed on the last day of the fiscal period which gave rise to their bonus. The court felt that, under these facts, the bonuses had been “earned” by the employees at the time of their discharge. Therefore, the employees were terminated after the incentive payments had accrued. In the instant case, the plaintiff’s employment was terminated prior to the end of the fiscal period which would have given rise to his incentive compensation. Here, the right to the money had not accrued at the time of discharge.
Accordingly, the judgment appealed from is Affirmed.
AFFIRMED.