441 So.2d 455 (1983)
Carl E. TOMPKINS, Plaintiff-Appellant,
v.
The SCHERING CORPORATION, D/B/A U.S. Animal Health Products, Defendant-Appellee.
No. 15812-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
*456 Thompson & Harp by George E. Harp, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by John T. Cox, Jr., Shreveport, for defendant-appellee.
Before PRICE, HALL and NORRIS, JJ.
NORRIS, Judge.
Carl E. Tompkins appeals a judgment rejecting his demands for certain commissions and vacation pay which he claimed to be due and owing to him from Schering Corporation after he was terminated.
Tompkins was employed by Schering Corporation on August 24,1981 to sell its veterinary products in a three state area. It was the agreement between the parties that Tompkins would be paid a straight salary plus additional bonuses in lieu of commissions through 1981 and thereafter he would continue to receive a salary plus additional compensation in accord with Schering's commission or incentive program. His employment was subject to all employee policies as described in the Employee Handbook, sales manuals, and other company communications. During the first week of January, 1982, Schering introduced an "Incentive and Awards Program" to its sales personnel at its annual sales meeting in Chicago. The plan specifically noted significant changes in the method of determining incentive payouts for 1982. The total incentive payout was to consist of commissions and "push programs" (money and premiums). The commissions were to be paid at varying rates depending on the category of products sold. The plan provided for three commission periods during the year and that any representative leaving Schering for any reason during a commission period would be ineligible for any incentive payment during that period.
Tompkins was present at the annual sales meeting when this new incentive program was introduced and was aware of its provisions. This program was equally applicable to all of Schering's sales representatives. On March 15,1982, during the first commission period under the plan, Tompkins was terminated for unsatisfactory job performance. After his termination, Tompkins demanded his accrued vacation pay and the commissions which he contended were due him for the period from January 1, 1982 through his date of termination.
Schering contended that the only sum owed to Tompkins at the time of his termination was five days' vacation pay. This amount was tendered to Tompkins in the form of a check dated March 19,1982. Sent with the check but not made a part of it, was a form which was entitled "Certification Receipt and Release". Tompkins refused to sign the form or cash the check. Thereafter, his attorney contacted the company demanding that Tompkins be paid an additional week of vacation pay, reimbursement for long distance calls, five sick days, commissions and a premium award. Because Schering disputed that these amounts were owed [with the exception of the phone bill which was promptly paid], this suit followed. At trial, Tompkins conceded that the only sums actually in dispute were the vacation pay and the bonuses or commissions due under the incentive plan. The trial court concluded that Schering had paid Tompkins all the sums which he was due; and Tompkins appeals.
The two pivotal issues presented by this appeal are (1) whether or not the tender of the check for the vacation pay was a conditional tender, and (2) whether or not the eligibility provisions of the incentive and award plan are ambiguous and/or constitute a forfeiture of wages under La.R.S. 23:634.
La.R.S. 23:631 provides:

*457 A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section.
A conditional tender of a check in final payment of a claim for wages does not constitute compliance with La.R.S. 23:631(B) and does not absolve the employer from the penal provisions of the statute. Haywood v. Salter, 421 So.2d 1190 (La.App. 2d Cir.1982); Rush v. Ryan Chevrolet, Inc., 408 So.2d 984 (La.App. 2d Cir.1981). Thus, in order to comply with La.R.S. 23:631, Schering's tender of the check for the vacation pay[1] must have been unconditional and not contingent upon Tompkins' execution of a release or compromise settlement. Hess v. Pembo, 422 So.2d 503 (La.App. 4th Cir. 1982).
It is significant that the check which was received by Tompkins was devoid of any restrictive or settlement language. The notation on the ledger simply stated that it was for five days vacation pay. The release[2] was simply included with the check with no instructions. Certainly, under these particular facts and circumstances, the cashing of the check without signing the release form and returning it to Schering would not have constituted an accord and satisfaction or a release in favor of Schering for other amounts alleged to be due and owing. Furthermore, in a letter dated April 20, 1982, written by Tompkins' attorney to Schering demanding payment of amounts contended to be owed, we find the following language:
... Mr. Tompkins was paid his regular salary (less commission) through March 15, 1982, and five days vacation pay. However, the following remuneration was not paid ... [Emphasis added.]
Thus, by Tompkins' own admission it is obvious that he did not consider this to be a conditional tender at the time that the letter was written and in fact acknowledged that this amount had been paid. Therefore, *458 we conclude that under the particular facts and circumstances of this case, that the check issued by Schering for the vacation pay was not a conditional tender because it was not delivered to Tompkins conditioned upon his signing the release. Therefore, we conclude that Schering adequately complied with La.R.S. 23:631(B).
A more serious issue is raised by the eligibility provision of the incentive program which states:
As in the past, our incentive programs are designed to reward sales performance, while merit salary increases reward the territory management of your job.
In 1982, we will implement the trimester commission payout plan. There will be three (3) commission payment periods and they will be: January-April (payment about June 15); May-August (payment about October 15); and September-December (payment about February 15, 1983). This method of payment is designed to help you see the results of your efforts and be able to enjoy them (the dollars) sooner.
With the changes in the payout schedule, there will be corresponding changes in the eligibility of representatives for commission income. Representatives employed during the first half of the commission periods (i.e., January, February, May, June, September, October) will receive pro-rated incentive payments for that period. Representatives employed during the second half of each commission period will receive no incentive payment for that period. Representatives leaving Schering, for any reason, at any time, during the commission period will be ineligible for any incentive payment during that period. [Emphasis added.]
Tompkins first argues that the language contained within the eligibility provisions of the incentive program is ambiguous and because of this ambiguity should be interpreted against Schering.
Tompkins' contention apparently would have us interpret the eligibility provision to mean that because he was in the employ of Schering for the first half of the commission period, that he is entitled to benefits until the time of his termination. The particular word which Tompkins apparently relies on as being controlling is "employed." Employed is defined by Black's Law Dictionary:
Term signifies both the act of doing a thing and the being under contract or orders to do it. To give employment to; to have employment.
Accordingly, "employed" may be synonomous with "hired."
We conclude, as did the trial court, that the only reasonable interpretation to be given to the paragraph in question is that a representative employed initially [or hired] during the first half of a commission period will receive prorated incentive payments; a representative employed initially [or hired] during the second half of a commission period will receive no incentive payment for that period and a representative leaving Schering for any reason during the incentive period [no matter when hired] will receive no incentive payments. This is the only interpretation which can be given the agreement which does not lead to absurd and ridiculous results and which clearly reflects and gives effect to the true intent of the parties. La.C.C. Arts. 1945, 1946, 1951, 1952, and 1955. This interpretation gives effect to the agreement rather than rendering its language without meaning. See Crow v. Southern Natural Gas Co., 210 So.2d 596 (La.App. 2d Cir.1968).
Tompkins next argues that the provision which applies to an employee leaving Schering for any reason during a commission period and rendering that employee ineligible for any incentive payments during that period is in violation of La.R.S. 23:634, which provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages *459 actually earned up to the time of their discharge or resignation.
It is clear under the facts of this case that under the terms of Tompkins' employment, he was subject to the incentive program. It is undisputed that he was terminated for cause prior to the end of the first commission period. The bonus payments were part of his compensation for services rendered conditioned upon his remaining with Schering for the entire commission period.
Tompkins argues that the case of Pender v. Power Structures, Inc., 359 So.2d 1321 (La.App. 4th Cir.1978) is authority for our holding that Tompkins is entitled to recover the commissions which he earned prior to his termination.
Pender is an extension of the rationale in Morse v. J. Ray McDermott, 344 So.2d 1353 (La.1976) which addressed the issue of whether a former employee who was terminated without cause due to the state of the economy was entitled to recover amounts due under the company's supplemental compensation plan which contained a forfeiture clause. The supplemental compensation plan in that case was to reward salaried employees and to induce them to continue in their employment. In accordance with the plan, the company placed a fixed percentage of the company's profits for each fiscal year in a reserve from which awards were made on the basis of each employee's contribution to the success of the company during that year. The awards were made annually and were payable in five equal installments. The first installment was paid when the award was made and four remaining installments were paid on July 15 of each of the four succeeding calendar years during which the employee remained in the company's employ. If employment was terminated for reasons other than death, disability or retirement, all unpaid portions of the prior awards were forfeited. The plan referred to the right of the employee to receive monies, once awarded, as a "contractual right." The court held that this forfeiture provision was invalid because an employer cannot take a man's labor on the condition of possibly awarding retrospective pay, then award the retrospective pay but deliver only a portion of the pay and prevent him from collecting the delayed portions by terminating his employment. This was found to be particularly true where the denying of the benefit did not impose on the employer any supplemental obligation and the company in its unfettered discretion may decide to make payments to other similarly terminated employees. The court found that such awards were not gratuities but were delayed compensation or pay for performed services. The supplemental cause was to encourage employees to remain with the company. There, the employee had performed and was willing to continue his employment therefore the plan was unenforceable when applied to the circumstance where the unilateral act of the employer kept the employee from performing his part of the bargain, i.e. remaining employed to the date on which the delayed portions were payable. The employer was not allowed to defeat its obligation to pay by preventing the employee from fulfilling his obligation by terminating without cause because of the overriding considerations of justice and fair play and the strong public policy against wage forfeitures, coupled with the employer's discretionary denial of the employee's earned compensation. Morse expressly did not address the issue of whether such a plan would be enforceable should it not contain a waiver of non termination provision.
Thereafter, the court in Pender v. Power Structures, Inc., supra, addressed the issue of the validity of a bonus plan's requirement that an employee still be employed on a scheduled date, i.e., thirty days beyond the bonus period, for the payment of the bonus. The plan in question required that an employee work thirty days beyond the bonus period as a contingency to its collection. The bonus was part of the employee's bargained for compensation. The court concluded that La.R.S. 23:634 prohibited the employer from forfeiting such compensation when the employee had worked for the entire period of profits upon which the bonus was based but did not work the required *460 additional thirty days. The court found Morse not to be controlling because the employee was fired for cause and expressly did not address the issue of whether an employer can require an employee to continue in its employment until the end of the bonus period in order to collect a bonus for the period.
In Seifert v. General Tire and Rubber Co., 381 So.2d 1262 (La.App. 4th Cir.1980), an employee who had been terminated for cause sought to recover a bonus to which he would have been entitled had he worked through the end of the fiscal year. The employee was terminated on November 4, 1976 and the fiscal year ended November 30, 1976. Under the terms of this plan, the employee who received a fixed salary and did not receive commissions on sales could earn additional wages based on two particular stores' quota achievement. The eligibility requirements for the plan provided that the employee be in the employment of the company at the time of the bonus payment. The court found Morse not to be controlling because the employee was terminated for cause. Therefore, he was not eligible for the bonus because he was not in the company's employment at the end of the bonus period.
In Hinton v. Owensby & Kritikos, Inc., 425 So.2d 926 (La.App. 4th Cir.1983), an employee sued to recover sums due under an incentive compensation program. The employee had entered into an agreement with the company which provided for an incentive program where he would receive as part of his compensation 1% of the net volume of annual business generated during a fiscal year from November 1 to October 31. The agreement provided that compensation generated for a fraction of the year would not be paid except at the direction of the Board of Directors. The employee was terminated on July 24, 1980 for cause. Thus, the court concluded, as it had in Seifert, that Morse was not controlling because this was a situation where the employee was fired because of fault on his part. Pender was also distinguished by the court and it was held that because the employee was terminated prior to the end of the fiscal period which would have given rise to his incentive compensation, the right to the money had not accrued at the time of the discharge.
Applying the foregoing rationale to the instant case, we conclude that the provision of the Incentive and Awards Program which requires that the eligibility of the employee be conditioned upon his being in Schering's employee at the end of the commission period is not a prohibited forfeiture under La.R.S. 23:634 under the facts of this case where the employee was terminated for cause and the requirement was uniformly applied to all of Schering's sales personnel. We find Morse to not be controlling in the factual situation presented by this case.
Accordingly, we conclude that the trial court was not in error in determining that Tompkins had received all of the money which he was due under his employment agreement with Schering. Therefore, the judgment of the trial court is affirmed in its entirety. Costs of this appeal are cast against appellant.
JUDGMENT AFFIRMED.
NOTES
[1] Vacation pay is considered to be "wages" for the purposes of La.R.S. 23:631. Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir.1982).
[2] This enclosure reads as follows:

CERTIFICATION, RECEIPT AND RELEASE
(1) This is to certify that I have returned to Schering all of its property entrusted to my care or use during my employment and remaining in my possession (including but not limited to any and all research notes, technical data, compounds and product samples, company credit cards).
(2) In reliance upon the aforesaid certification, Schering Corporation has paid me, and receipt is hereby acknowledged of, the sum of $241.02 NET, representing all sums due me from Schering Corporation. I understand that any sums due me from the Schering Corporation Employees Federal credit Plan, Schering Employees' Suggestion Plan, sales incentive plans and Retirement Plan, will be paid separately by those entities in accordance with their respective procedures.
(3) I hereby release and discharge Schering Corporation from any and all claims and demands whatsoever.