476 So.2d 830 (1985)
Robin Ferst HOWSER
v.
CARRUTH MORTGAGE CORPORATION and Mellon National Mortgage Corporation.
No. 85-CA-181.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 1985.
*832 John S. Thibaut, Jr., Thibaut, Thibaut, Garrett & Bacot, Baton Rouge, for Robin Ferst Howser plaintiff-appellant.
Cornelius R. Heusel & Everett M. Mechem, Kullman, Inman, Bee & Downing, New Orleans, for Carruth Mortg. Corp. and Mellon Nat. Mortg. Corp. defendants-appellees.
Before BOUTALL, KLIEBERT and GRISBAUM, JJ.
BOUTALL, Judge.
This is a suit brought by Robin Howser, plaintiff-appellant, to recover certain fees from her former employer, Carruth Mortgage Corporation and its parent company, Mellon National Mortgage Corporation. Plaintiff also seeks statutory penalty wages and attorney fees, LSA-R.S. 23:631, 23:632 and 23:634. Judgment was rendered in part for Howser and in part for the defendants; Howser and Carruth have appealed. Mellon was dismissed from the suit and that dismissal is not contested on appeal.

FACTS
Plaintiff was employed by Carruth in June of 1978 as a commercial loan originator and resigned at the end of May, 1981. It was her job to seek out developers and owners of commercial real estate projects and to obtain financing for their projects, whether it was conventional financing obtained through Carruth, or FHA financing. Each method of financing differed greatly from the other.
Plaintiff was paid a salary and a commission, referred to as incentive compensation fees. These fees were of two kinds: an origination fee, based on the amount of fees collected by the originator and split with the defendant company, and servicing fees, a fee paid to the originator when the mortgage company retained servicing on a loan. The origination fee was determined by taking 50% of all fee money originated over and above what was called an annual base level, which at the time of plaintiff's resignation was $85,000.00. The amount of the servicing fee was based on the size of the loan retained by the company. Both fees are described in the defendant's Income Loan Originator Incentive Program (ILOIP), which each loan originator was required to sign.
Upon resignation, plaintiff submitted a written demand and accounting for her portion of the origination fees she felt she had earned from January 1, 1981 through the date of her resignation. Her figure was based on a proration of the annual base level described above. Carruth disagreed with the amount plaintiff demanded and, using its method of calculation which did not allow for proration of the annual base level, tendered payment. Plaintiff rejected the tender. The dispute over the amount of money due forms the basis of this suit.
Plaintiff then filed suit seeking her share of fees as demanded in her resignation letter, attorney fees and penalty wages. Additionally, plaintiff sought $2500.00 in servicing fees ($500.00 per loan on 5 loans *833 closed by the defendant and on which defendant maintained servicing), interest on the $500.00 servicing fee from the Feliciana Project loan from the time it was due, three weeks vacation pay in lieu of actual time taken, and damages for over withholding federal income tax on plaintiff's last check for fees.
Following trial on the merits, the trial court rendered judgment in favor of plaintiff for $13,448.00, with interest, consisting of the $500.00 servicing fee on the Feliciana Project loan, $6,180.50 as her share of incentive compensation fees, and a $6757.50 fee on the Plantation Business Campus loan. The court found plaintiff's claims for compensation in lieu of vacation and damages for over withholding to be without merit.
Plaintiff appeals contending the trial court erred: in not prorating her annual base level (thus determining she was due $6185.50 instead of $31,472.00 in origination fees), in not awarding her penalty wages and attorney fees, and in not awarding incentive compensation fees on certain FHA projects originated by plaintiff. Plaintiff also appeals the trial judge's failure to award $2500 in loan servicing fees, three weeks compensation in lieu of vacation time, and damages for over withholding federal income taxes on her last check for fees.
Carruth answered the appeal, seeking a reversal of the legal interest awarded on the $6180.50 and $500.00 awards, and reversal of the award of $6,757.50 as the fee on the Plantation Business Campus loan.
These issues are raised for our review:
1. Whether the ILOIP plaintiff signed required proration of her annual base level;
2. Whether the provision in the ILOIP stating that any fees earned more than 90 days after an employee's resignation would not be paid to the employee is a prohibited forfeiture of wages in violation of LSA-R.S. 23:634;
3. Whether plaintiff is entitled to statutory penalty wages and attorney fees because tender of plaintiff's wages was made more than 72 hours after plaintiff's resignation, in violation of LSA-R.S. 23:631 and 23:632;
4. Whether plaintiff is entitled to compensation in lieu of 3 weeks vacation time and;
5. Whether plaintiff is entitled to damages for over withholding federal income tax on her last check for fees.

PRORATION OF ANNUAL BASE LEVEL
Plaintiff was required to sign an ILOIP at the beginning of 1981, effective from January 1, 1981 through the end of that year. Plaintiff's salary for the year was $30,000.00. The ILOIP provides in pertinent part:

* * * * * *

FEES COLLECTED INCENTIVE PAID
$ 0 - $85,000* None paid on first $85,000*
 - 85,000 50% of the fee
* The base level is designed on average to cover all
department costs before incentive is paid........

The issue is whether the ILOIP language shows the incentive pay to be based on an annual cost level only or whether proration is allowed when an employee resigns before the end of the year. Our review of the ILOIP reveals that it does not specify the matter of proration of the annual base level on job termination.
There was testimony at trial that a loan originator's annual base level would be prorated upon hiring but not upon termination. Plaintiff testified that her understanding of the ILOIP was that an originator's annual base level would be prorated upon hiring and termination. The president of Mellon testified it was not the company's policy to prorate the annual base level upon resignation of an employee, and that any changes to the ILOIP had to be approved by him. The trial judge found as a factual matter that it was not Mellon's policy to prorate an income loan originator's annual base level upon resignation. Plaintiff was thus awarded $6,180.50 with interest.
*834 A reviewing court must give great weight to the factual conclusions of the trial judge. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Here the trial judge found that it was not the mortgage company's policy to prorate an originator's annual base level upon resignation. This conclusion is supported by the evidence and we cannot say it is manifestly erroneous. Arceneaux v. Domingue, supra. Accordingly, that part of the judgment awarding plaintiff $6,180.50 is affirmed.
Before turning to the next issue, we note that the award of interest on the above amount is erroneous. Interest was awarded from June 1, 1980. That date should be June 1, 1981 since 1981 is the year plaintiff resigned and is the year in dispute. Accordingly, the judgment is amended to reflect that interest on the $6,180.50 award begins to run from June 1, 1981.

FORFEITURE OF WAGES
This issue concerns whether certain provisions in the ILOIP constitute a prohibited forfeiture of wages in violation of R.S. 23:634; it reads in pertinent part:
"Origination incentive will be paid in the month following the month in which the fees are collected and earned, after reaching the $85,000.00 base. No incentive fee will be deemed earned until the origination fee has been paid in cash to the company and in accordance with Carruth policy for recognizing income ... For cases in which a commitment has been issued, and the loan originator is no longer employed by Carruth, the origination fee is deemed earned by him or her provided it is paid within 90 days of termination. If a commitment has been issued, and the origination fee is paid more than 90 days after the employee's termination date, the origination fee will be put into the house account.

* * * * * *
None of the fees plaintiff sued for were collected within 90 days following her resignation. Essentially, the fees can be divided into two categories: the Plantation Business Campus loan and the FHA Project loan.
a. Plantation Business Campus loan
This was a conventional loan, with Mellon as the lender. Plaintiff was awarded $6757.50 in fees on her claim although the money had been collected more than 90 days following her resignation. The court stated in its reasons for judgment that "... in light of Hinton v. Owensley & Kritckos (sic), Inc., 425 So.2d 926, this was the only fee `earned' by the plaintiff at the time of her resignation, therefore, the right to this money had accrued. Interest to run from September, 1981." This fee was actually paid on September 2 and September 24, 1981, and plaintiff's 90 days would have expired in August of 1981.
Defendant contends that under a literal interpretation of the ILOIP no fee was due since it was collected more than 90 days following plaintiff's resignation.
LSA-R.S. 23:634 provides:
No person, acting for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before their contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
(Emphasis added).
We agree with the trial judge's conclusion that the Plantation Business Campus fee had been earned at the time of plaintiff's resignation. The record reveals that the only work remaining on the loan at the time of plaintiff's resignation was the actual collection of the fee, and once plaintiff resigned, it was beyond her control whether the money would be collected within the time period outlined in the ILOIP. R.S. 23:634 is controlling in this situation and the trial judge was correct in applying it to determine when the fee was actually earned.
*835 We thus affirm that part of the judgment awarding plaintiff $6757.50 in fees on the Plantation Business Campus loan.

b. FHA Loans

In comparison to conventional loans, FHA loans take a substantial amount of time and effort to complete because of the numerous government regulations involved. The person who took over the FHA loans following the plaintiff's departure testified she spent 99% of her time the following year working on these loans. The trial judge held the fee had not been earned by the plaintiff when she resigned. Again, this is a factual finding not to be disturbed in the absence of manifest error.
We hold that because substantial time and effort remained to be invested in the FHA projects following plaintiff's departure, her right to the fees had not been earned at the time of her resignation. Accordingly, we affirm the denial of plaintiff's claim for fees on these projects.

STATUTORY PENALTY WAGES AND ATTORNEY FEES
The instant judgment does not mention either statutory penalty wages or attorney fees. LSA-R.S. 23:631 provides in part:
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation ...
B. In the event of a dispute as to the amount due under this section, the employer shall pay the undisputed portion of the amount due as provided for in subsection A of this section
* * * * * *
LSA-R.S. 23:632 provides:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for 90 days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Appellant contends since no sums owed her were paid or tendered within 72 hours of her resignation[1], she should be awarded penalty wages and attorney fees pursuant to the above statutes. Carruth contends there was a good faith dispute over amounts owed, and accordingly, is not liable for penalty wages or attorney fees. We do not agree in full with Carruth's contentions.

a. Penalty Wages
R.S. 23:632 is a penal statute, and as such, must be strictly construed. A well recognized exception to the imposition of statutory penalties is where a good faith dispute exists over the amount of wages due. Rubenstein Bros. v. LaForte, 320 So.2d 303 (La.App. 4th Cir.1975), McFarland v. Texhoma Contractors, Inc., 449 So.2d 1106 (La.App. 5th Cir.1984), and Johnson v. Continental Slip Form Builders, 449 So.2d 56 (La.App. 5th Cir.1984).
The record reflects a good faith dispute existed over all amounts owed plaintiff with one exception, that being the $500.00 servicing fee awarded on the Feliciana *836 loan.[2] This loan was closed prior to but collected after plaintiff's resignation, and Carruth maintained servicing on it. It was not paid by the defendant until May of 1982, almost one year following plaintiff's resignation. Plaintiff demanded the $500.00, when she resigned; it was included in the schedule of fees attached to her resignation letter. In its brief, Carruth concedes the amount was due. Carruth has failed to offer any explanation as to why this fee was not paid timely, and since no good faith dispute exists over this amount, penalty wages must be awarded.
LSA-R.S. 23:632 provides that the penalty wages should be either 90 days wages at the employee's daily rate of pay, or full wages from the time the employee makes demand until the employer pays or tenders the amount due, whichever is the lesser amount. Here, since the $500.00 was not paid until nearly one year after demand, the lesser amount is 90 days wages. Plaintiff was paid $30,000.00 annually; 90 days wages amounts to $7,500.00 (3/12th of $30,000.00). Accordingly, the judgment is amended to award plaintiff $7500.00 in penalty wages.
However, the judgment awards plaintiff the $500.00 servicing fee with interest to run from May 11, 1981, the date of demand. Carruth contends on appeal that the interest award should be reversed, as the interest should stop running on the date of tender. We agree. Interest is due on a contractual claim from the date the debt is due, former L.C.C. art. 1983 (now a part of L.C.C. art. 2000), until the amount is tendered or paid. Also, the tender must be unconditional. There is no question herein that the $500.00 tender was unconditional.
According to the ILOIP, a servicing fee is paid, or due, an employee the month following the month it is earned. It appears from the record that the fee was due on June 15, 1981.[3] The fee was tendered to plaintiff on May 12, 1982, according to the parties' pretrial stipulation. Thus, the instant judgment is amended to hold that interest on the $500.00 award shall run from June 15, 1981 through May 12, 1982 with credit given for the interest previously paid.

b. Attorney Fees

Attorney fees are mandatory when an employee brings a well founded suit for unpaid wages, LSA-R.S. 23:632 and Mondy v. Robin Towing Corp., 441 So.2d 361 (La. App. 5th Cir.1983). The instant judgment is silent on the issue of attorney fees.
The instant suit is a well founded suit since plaintiff recovered $13,448.00 in unpaid wages in the trial court. Additionally, on appeal, we have amended the judgment to include an award of penalty wages. Thus, we must award a reasonable attorney fee. In view of the apparent effort expended by plaintiff's counsel, both at trial and on appeal, we order an award of $4,090.00 in attorney fees, taxed as cost to be paid by Carruth. The judgment is amended accordingly.
COMPENSATION IN LIEU OF VACATION
Appellant contends she is entitled to compensation in lieu of 3 weeks vacation time not taken in 1981, or $1,730.76. Carruth contends it was not their policy to pay for vacation time not taken. The ILOIP merely provides that time off is at the discretion of the originator; no time limits are set. The president of Mellon testified it was not the company's policy to pay in lieu of vacation.
Vacation pay is considered to be wages for purposes of LSA-R.S. 23:631, Tompkins v. Schering Corp., 441 So.2d 455 (La.App. 2nd Cir.1983).
The trial judge rejected plaintiff's claim for vacation pay. We find the testimony *837 supports the trial judge's conclusion that it was not Carruth's policy to compensate its employees for vacation time not taken and we affirm that part of the judgment.
DAMAGES FOR OVER WITHHOLDING ON FEDERAL INCOME TAXES
It appears from the record when plaintiff first began working for Carruth, federal income tax on plaintiff's earned fees (as opposed to her salary) was withheld at the rate of 30%. Later in her employment, however, plaintiff reduced the amount Carruth was authorized to withhold to 20%. When Carruth tendered plaintiff her last check for income compensation fees, Carruth had withheld more than the 20% authorized by plaintiff for federal income taxes.
Howser seeks interest on the amount of money withheld over and above the 20% she had authorized. Specifically, she claims Carruth withheld $786.47 too much. The trial judge rejected plaintiff's claim.
The personnel officer for Mellon testified at trial that a mistake had been made when the withholding for federal income taxes was computed. This officer also testified this was not an intentional act on the part of Mellon.
It is not disputed that this was a mistake on Carruth and Mellon's part. Nor is there evidence which indicates it was an intentional act. The trial judge's conclusion is not manifestly erroneous on this point, and we affirm that conclusion.
Accordingly, we recast the judgment in favor of plaintiff, Robin Ferst Howser, and against defendant, Carruth Mortgage Corporation in the full sum of $20,438.00; with credits and interest as follows:
1) On the amount of $7500.00 penalty  legal interest from the date of this judgment until paid;
2) On the amount of $6180.50legal interest from June 1, 1981 until paid;
3) On the amount of $6757.50legal interest from September 27, 1981 until paid;
4) We do not include in the full sum the $500.00 because it has been previously paid. However, we assess interest on the $500.00 to run from June 15, 1981 through May 12, 1982 and a credit is ordered for any interest previously paid on this amount;
Additionally, we cast the defendant Carruth Mortgage Corporation in judgment in the amount of $4090.00 statutory attorney's fees and tax that as costs with legal interest from the date of this judgment until paid;[4]
Finally, all legal costs in both courts are assessed against the defendant Carruth Mortgage Corporation.
AMENDED AND AFFIRMED.
NOTES
[1] Appellee states in its brief that Howser was paid her base salary within three days following her resignation and that amount is not at issue.
[2] We note that this fee had actually been paid to plaintiff prior to trial, although the judgment included the $500.00 amount. Thus, Carruth is entitled to a credit in the amount ultimately owed plaintiff from this law suit for that amount.
[3] Exhibit J-11.
[4] Once costs are made definitive in judgment under C.C.P. Art. 1920, the judgment sets the amount of the debt which then becomes due as a money judgment. Under C.C.P. Art. 1921 the court shall award interest as prayed for or as provided by law. Civil Code Articles 1935 and 1938 provide for interest from the time the debt becomes due.