742 So.2d 589 (1999)
Johnny PICARD, et al., Plaintiffs/Appellants,
v.
VERMILION PARISH SCHOOL BOARD, Defendant/Appellee.
No. 98-1933.
Court of Appeal of Louisiana, Third Circuit.
June 23, 1999.
Writ Denied November 19, 1999.
*590 James Isaac Funderburk, Abbeville, for Johnny Picard, et al.
Calvin E. Woodruff Jr., Abbeville, for Vermilion Parish School Bd.
BEFORE: SAUNDERS, WOODARD AND DECUIR, Judges.
SAUNDERS, Judge.
Twelve former employees of the Vermilion Parish School Board sued the board for compensation for unused and accrued annual leave. The trial court distinguished between those employees that were involuntarily terminated, granting them relief, and dismissed the claims of the remaining nine former employees who left the school system voluntarily. From this judgment, the nine dismissed claimants appeal.

FACTS
Twelve Plaintiffs were employed by the Vermilion Parish School Board, hereinafter "Defendant," as twelve month employees subject to an annual leave policy, File CGPI, which was adopted on January 9, 1992. From the lower court's judgment dismissing their claims for reimbursement of accrued, unused vacation time, nine employees, Irma Ball, Louis Boudreaux, Thomas Harris, Mildred Haynes, Stanislaus Kasperski, Michelle Labit, Carlene O. LeMaire, Johnny Picard and Velton Vincent, hereinafter "Plaintiffs," bring this appeal. Plaintiffs assert Defendant has improperly deprived them of their vested interests in unused, accrued vacation time under La.R.S. 23:631, et seq.
Defendant's annual leave policy does not address how unused, accrued annual leave (vacation) is handled when an employee is terminated or voluntarily leaves. Nevertheless, Defendant produced evidence in the form of testimony from three of its administrative employees indicating that it was a general practice to encourage employees to use up vacation time before separation or retirement.

LAW AND ANALYSIS

I. Accrued Vacation
La.R.S. 23:631 provides, in pertinent part:
A. (1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular pay day or no later than fifteen days following the date of resignation, whichever occurs first.
. . . .
D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.

*591 (2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
Additionally, La.R.S. 23:634 strictly forbids an employer from requiring an employee to, by contract, forfeit wages upon termination, to wit, section (A) provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
Our focus of review considers when does vacation pay become an "amount due under the terms of employment" or "wages" and when is vacation "actually earned" or vested within the meaning of La.R.S. 23:631 and La.R.S. 23:634. In his Reasons for Ruling, the trial judge cited Beard v. Summit Institute, 97-1784 (La.3/4/98); 707 So.2d 1233, and language therein indicating that the essence of what brings accrued vacation time wages within the meaning of La.R.S. 23:634 is consideration, that is, "when an employer agrees to pay employees for unused vacation time as a condition of their employment...." Id. at 1235. The trial judge emphasized that "[i]n this case, no evidence was presented to prove that the school board ever agreed to pay for accrued but unused vacation time." The trial judge explained that "defendant never agreed to pay for accrued but unused vacation time, and under the Beard case, this is not in contravention of the plaintiff's rights."
We acknowledge that the jurisprudence is replete with the general statement, "[v]acation pay is considered to be wages for purposes of LSA-R.S. 23:631." Draughn v. Mart, 411 So.2d 1188 (La.App. 4 Cir.1982), writ denied, 415 So.2d 944 (La.1982); Baudoin v. Vermilion Parish School Bd., 96-1604 (La.App. 3 Cir. 4/2/97), 692 So.2d 1316, writ denied, 97-1169 (La.6/20/97), 695 So.2d 1358; Barrilleaux v. Franklin Found. Hosp., 96-343 (La. App. 1 Cir. 11/8/96), 683 So.2d 348, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864; Macrellis v. Southwest La. Indep. Ctr., 94-1155 (La.App. 3 Cir. 5/3/95), 657 So.2d 135. Nevertheless, jurisprudence delimiting the phrases "amount then due under the terms of employment" or "wages" and "vacation actually earned" within the meaning of La.R.S. 23:631 et seq. has been sparse. A review of the jurisprudence illuminates the principles and policy concerns behind these statutes.
In Huddleston v. Dillard Dept. Stores, Inc., 94-53 (La.App. 5 Cir. 5/31/94); 638 So.2d 383, the court found that where an employer has a clearly established policy that vacation time is not considered wages for the purposes of La.R.S. 23:631(D)(2), an employee is not entitled to reimbursement for unused, accrued vacation time. In Huddleston, the employee handbook clearly stated that vacation is a benefit and not an earned wage and that vacation pay is not available to employees terminated for cause. So, for our purposes, vacation pay under the policy in Huddleston would not fall under the category of something "actually earned by an employee pursuant to the employer's policy" under La.R.S. 23:631 D(2). The Huddleston court recognized that unless otherwise provided, earned vacation is a wage. Id., citing Howser v. Carruth Mortg. Corp., 476 So.2d 830 (La.App. 5 Cir.1985), Landry v. Pauli's Inc., 496 So.2d 431 (La.App. 5 Cir. 1986), writ denied, 500 So.2d 428 (La. 1987).
In Landry, the court referenced Howser v. Carruth Mortg., to award the claimant reimbursement for unused vacation time where the employer's policy was poorly defined and where the evidence indicated that it was generally accepted that an employee would get ten vacation days per year. In Howser, the reviewing court *592 stated that vacation time is considered wages for the purposes of La.R.S. 23:631 and, discussing the employment contract, noted the "ILOIP merely provides that time off is at the discretion of the originator; no time limits are set." Id., 476 So.2d at 836. The court then, without further analysis, affirmed the trial judge's denial of compensation of unused vacation time based on the defendant employer's explanation that an unwritten policy prohibited compensation to employees for vacation time not taken.
In Lee v. Katz and Bestoff, Inc., 479 So.2d 459, 460 (La.App. 1 Cir.1985), the vacation policy provided: "Unused vacation is forfeited upon separation of employment or notice of intent to terminate employment. No vacation days will be carried over to the following year." In Lee, the reviewing court refused to grant summary judgment, emphasizing vacation pay is considered wages under La.R.S. 23:631 and that La.R.S. 23:634 renders any contract forfeiting wages upon discharge unlawful. The Lee court further observed that the employee handbook fell "within the concept of a `standard contract' or `contract of adhesion,'" and noted that "such a contract is `usually ... prepared by a party of superior bargaining power for adherence or rejection of the weaker party.' Comment (c) under La. C.C. art. 2056 (1984)." Id. at 460. La. Civ.Code art. 2056, entitled "Standard-form contracts," provides, in pertinent part, "[a] contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." The contract in the matter sub judice is not unclear; it simply does not address the problem of accrued, unused vacation time. However, we note the policy concerns discussed in Comment (c) to Article 2056 resonate throughout La.R.S. 23:634 which forbids an employer's requiring an employee to contract out of earned wages.
In Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1976), the Supreme Court held that a forfeiture clause in the employer's profit-sharing plan was manifestly unjust where the employer's unilateral act, discharging the employee without cause, prevented fulfillment of the condition required for the employee's rights to vest in the benefits. The Morse case involved delayed compensation that was denied an employee after he was terminated without cause.
In Blankenship v. Southern Beverage Co., 520 So.2d 440, 442 (La.App. 1 Cir. 1988), writ dismissed, 522 So.2d 574 (La. 1988), the employer decided to withhold vacation compensation to an employee who quit suddenly; the employer, in the absence of a written policy, sought to exercise a case-by-case discretionary policy regarding vacation time. The court in Blankenship noted, "[s]ince plaintiff had clearly earned two weeks paid vacation upon completing one year of employment with defendant, which was well prior to his resignation, defendant's refusal to pay him for this benefit amounted to an impermissible forfeiture of earned wages."
In Berteau v. Wiener Corp., 362 So.2d 806 (La.App. 4 Cir.1978), writ denied, 365 So.2d 242 (La.1978), the defendant argued that its policy prohibited payment of benefits to non-employees. Finding the policy vague and not directly addressing the issue, along with the fact that many others were unaware of the asserted policy, the court found that the plaintiff's rights had vested when she finished the year and when she requested compensation for the vacation time. After finding the plaintiff's rights vested, the Berteau court noted the following:
A vested right is defined as that case when "the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right." Tennant *593 v. Russell, 214 La. 1046, 39 So.2d 726 (1949).
Id. at 808, 809.
"Once an employee's right to vacation benefits has vested, an employer cannot force forfeiture of this earned right." Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App. 1 Cir. 11/8/96); 683 So.2d 348, 353, citing Blankenship, 520 So.2d at 441; Lee, 479 So.2d at 460.
In Macrellis, 657 So.2d at 137, the court held the following:
Under the terms of SLIC's manual, annual leave was accumulated on the basis of the years of employment and was earned even during the probationary period. However, it could be used only after the employee had completed probation, attained regular full-time status, and been employed by the agency for one year. Although the right to enjoy the annual leave was prospective, it became the property of the employee as it was earned during the first year of employment. Thus, the earned annual leave was an "amount then due" under La.R.S. 23:631(A).
In Baudoin, an employer, the present Defendant in an earlier suit, changed its policy to require the plaintiff to forfeit vacation time. The court held that an employer could not change a policy so as to deprive an employee of vacation time already earned, reasoning, "[u]nder the provisions of LSA-R.S. 23:631 a resigning or discharged employee is entitled to recover vacation pay accruing prior to his discharge unless the employer's established policy precludes compensation for unused vacation days." (Citation omitted), Id., 692 So.2d at 1318, quoting Landry at 432-433. This reasoning suggests there should exist a presumption in favor of reimbursement of an employee's accrued, unused vacation time, which appears to be the import of both La.R.S. 23:631 and La. R.S. 23:634. This court in Baudoin found no clear or consistent policy addressing compensation of unused annual leave and found that if the unwritten policies asserted by the school board were in effect, they would be in contravention of the plaintiff's rights under Knecht v. Bd. of Trustees for State Colleges and Univ. and Northwestern State Univ.,[1] 591 So.2d 690 (La.1991).
Finally, we consider the learned words of Justice Tate in footnote 10 of Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353, 1359 (La.1976):
The courts of this state have noted that forfeitures of wages are not favored under our law. See Knight v. Oden, 282 So.2d 612 (La.App. 1st Cir.1973); United Shoe Stores Co. Inc. v. Dryer, 16 La. App. 605, 135 So. 50 (2nd Cir.1931). We do not believe adoption in 1966 of Act 536 (LSA-R.S. 23:640) expressly including pensions and other fringe benefits payable under collective bargaining agreements was intended to have the effect of excluding other fringe benefits from the definition of "wages." Passage of the act is indicative of the legislature's responsiveness to the concerns of labor interests that fringe benefits might not be considered "wages." If anything, it indicates that the legislature does consider fringe benefits wages within the meaning of La.R.S. 23:634.
(Emphasis Added.)
In the matter under review, Defendant relies on the Supreme Court's recent decision which considered compensation for an employee's unused vacation, Beard, 707 So.2d 1233, and argues that an employer owes reimbursement for unused vacation time to an employee only where such is part of the employee's consideration for the job. In Beard, the defendant had in place a policy which provided for the compensation of unused vacation time, but the policy contained an exception requiring the *594 forfeiture of all accrued benefits if an employee quit without cause or voluntarily resigned without notice. The Beard claimant sought reimbursement of accrued vacation pay, and the defendant refused, claiming that she abandoned her position and therefore forfeited her right to her accrued benefits. Noting that where the policy provided for the compensation of unused vacation time, such compensation is considered "wages" within meaning of La.R.S. 23:634, the court found that the policy violated La.R.S. 23:634 to the extent it required the forfeiture of the earned wages, that is, unused vacation time. The court ultimately held, "[w]hen an employer agrees to pay employees for unused vacation time as a condition of their employment, that accrued vacation pay is compensation that is earned during a pay period under Boudreaux.[2] As such, accrued vacation time is an `amount then due under the terms of employment' and constitutes wages under La. R.S. 23:631." Beard 707 So.2d at 1235. The Beard court further explained, "clearly if an employer may not require an employee to sign a contract providing for forfeiture of wages upon termination or resignation, an employer cannot require an employee to forfeit wages simply by enacting a policy to that effect." Id. This reasoning readily reflects the concepts of La.R.S. 23:634.
Both parties propound arguments under Beard. Defendant's argument essentially asserts that an employer owes an employee compensation for unused vacation only if the employer agrees to such. This rationale supplies a presumption in favor of an employer in that, without an agreement otherwise, an employer does not owe an employee anything since an employee has no vested rights in unused vacation time. This rationale might ring true as long as the benefits are not "an amount then due under the terms of employment" or "wages" which La.R.S. 23:631 et seq. protects from forfeiture. However, we can not ignore the overwhelming jurisprudential consensus that unused, annual leave is part of an employee's "wages." More importantly, the Beard decision overturned the Second Circuit's holding that an employer's wage forfeiture policy may be permissible where it penalizes an employee's voluntary act of quitting a job without notice to the employer. See Beard v. Summit Inst. of Pulmonary Med., 29,603 (La.App. 2 Cir. 6/18/97); 697 So.2d 621. That is, the Supreme Court overruled the same rationale used by the trial court in the present matter which awarded compensation only to those employees involuntarily terminated by Defendant and in effect, penalized those employees who quit voluntarily by depriving them of compensation.
Plaintiffs also set forth their argument under Beard, 707 So.2d 1233, along with Winkle v. Advance Prod. & Sys. Inc., 98-694 (La.App. 3 Cir. 10/28/98); 721 So.2d 983, and contend their vacation time is an earned, vested right under La.R.S. 23:631 which was inappropriately divested by virtue of an impermissible policy under La. R.S. 23:634. Winkle involved an employee, who upon termination, requested payment for unused vacation time. The employer in Winkle refused such reimbursement, arguing that it had in place a policy, albeit unwritten, that precluded post-termination reimbursement for unused vacation time. This court found that the plaintiffs vacation time was an "`amount then due under the terms of employment' and constitutes wages under La.R.S. 23:631." Id. at 986, quoting Beard, 707 So.2d at 1235. Additionally, we found in Winkle that the plaintiffs rights "accrued" or vested when she fulfilled the condition set forth in the vacation policy of completing the allotted time of employment.
Defendant asserts that Plaintiffs did not expect to be reimbursed for their unused *595 vacation time until approached by the successful attorney who represented the Baudoin plaintiff. Defendant presented testimony at trial evidencing that while not a written practice, it was an administrative practice to enforce a "use it or lose it" policy. The record indicates that Daniel R. Dartez, Superintendent of the Vermilion Parish School Board, Clifford Alleman, Jr., the Assistant Superintendent in charge of Administration and Personnel, and Theresa Dubois, payroll accountant for Defendant, all testified the administrative policy required an employee s to use annual leave while employed or lose it. Dartez testified that the policy was in place before he became Superintendent and that there was an 1983 policy authorized by the Board that required the forfeiture of any vacation days over thirty. Dartez noted, in 1992, the 1983 policy was written out by the Board and was expanded to be cumulative. Dartez acknowledged that the Board's current policy contains no language requiring the forfeiture of annual leave. Alleman explained that when an employee wants to retire, "we normally extend the retirement the number of days of annual leave days that the person has accumulated on the books, so that, in effect, they will use up all of their retirement leave when they leave the system." Alleman testified that the Board has 1,200 employees in Vermilion Parish and that he has not spoken with most of these people about what happens to unused annual leave upon retirement.
We find, however, even if Plaintiffs had no previous expectation of reimbursement, that alone does not divest Plaintiffs of rights vested by virtue of their completed work time. Defendant's annual leave policy, File CGPI, for "Twelve Month Management Personnel" is as follows:
Annual leave shall be granted to all twelve-month full-time employees. Twelve (12) month employees will accumulate annual leave as follows:
(a) Less than three (3) years of continuous service, at the rate of (1) day per month for a total of twelve (12) days.
(b) Three (3) years but less than ten (10) years of continuous service at a rate of one and one-fourth (1¼) days per month for a total of 15 days.
(c) Ten (10) or more years of continuous service at a rate of one and onehalf (1½) days per month for a total of 18 days.
. . . .
No annual leave may be taken without prior approval by the Superintendent. No employee may take annual leave exceeding 18 consecutive work days. No employee may take annual leave in excess of 40 work days in any school year, provided, however, that any employee who has accumulated more than 100 days of annual leave may take a maximum of 50 working days of annual leave during any school year.
In the event of the development of catastrophic illness an employee may exceed the annual leave limitations provided that the medical condition is supported by appropriate medical documentation and approved by the Superintendent.
While the policy makes no provisions that require the forfeiture of unused annual vacation it does provide that unused leave may be carried over from one year to the next, given the forty day maximum for leave that may be taken in any year. Additionally, leave is based on years of continuous service and determined by a monthly calculation which suggests that leave is earned, therefore vested, at the completion of each month. As such, we find that where an employment policy provides for the accrual of vacation time upon the completion of a specified amount of work, the policies against forfeiture of wages dictate that an employee's rights vest once the condition precedent, the allotment of work, is completed. We now hold that in the absence of a clear, written policy establishing that vacation time *596 granted by an employer to an employee is nothing more than a mere gratuity and not to be considered an amount due or a wage, accrued but unused vacation time is a vested right for which an employee must be compensated upon discharge or resignation.
Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989), provides the standard of review of a trial court's findings:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
Presently, in light of the long line of jurisprudence deeming vacation time an "amount then due under the terms of employment" or "wages" within the meaning of La.R.S. 23:631 and La.R.S. 23:634 respectively, and with a view for the disfavor surrounding wage forfeiture under our law, we find the lower court manifestly erred when it failed to find Plaintiffs had a vested right in their accrued, unused vacation time, despite their voluntary resignation. We find Plaintiffs' rights in vacation time vested upon completion of each month interval of employment, pursuant to Defendant's annual leave policy, File CGPI.

II. Penalties
La.R.S. 23:632 provides:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer. Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
La.R.S. 23:632 is a penal statute which much be strictly construed. Brown v. Navarre Chevrolet, Inc., 610 So.2d 165 (La.App. 3 Cir.1992). "In order to recover penalty wages, the employer must be found to have acted in bad faith or in an arbitrary or unreasonable manner, and penalty wages are not to be absolutely imposed when there is an equitable defense." Macrellis, 657 So.2d at 138. The trial judge ruled in favor of three employees that were involuntarily terminated, awarding reimbursement of their accrued, unused vacation time, attorney fees and penalty wages. We now award the same to the remaining nine Plaintiffs, including Stan Kasperski and Velton Vincent upon the trial court's finding their claims have not prescribed. (See Decree.)

III. Defendant's Answer
In its answer to Plaintiffs' appeal, Defendant seeks to appeal the judgment of the trial court, arising out of the same matter as the present appeal, which ruled in favor of Clarence Suire, Paul C. Boudreaux and Marcedell Joiner. La.Code Civ.P. art. 2133 allows an appellee to seeks modification, revision or reversal of a judgment *597 rendered in favor of the appellant in the answer. La.Code Civ.P. art 2133(A) provides, in pertinent part: "The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer." (Emphasis added.) Suire, Boudreaux and Joiner, however, are not parties to the appeal brought by Plaintiff; Defendant cannot circumvent the statutory delays within which an appeal may be brought on behalf of Suire, Boudreaux and Joiner by simply inserting these parties via an answer. Shelton v. Aetna Cas. & Sur. Co., 334 So.2d 406 (La.1976). Furthermore, as Defendant failed to brief the issues brought in its answer, pursuant to the Uniform Rules Courts of Appeal 2-12.4, they are considered abandoned. Accordingly, we find the assignments of error set forth in Defendant's answer not properly brought before this court.

DECREE
As an initial matter, where earlier the trial court found the exception moot and declined to consider it, upon remand we order the lower court to rule on Defendant's exception of prescription as to the claims of Stan Kasperski and Velton Vincent. We award to Plaintiffs $5,000.00 in attorney's fees, reimbursement of each Plaintiff's determined unused, accrued vacation time and penalty wages in accordance with La.R.S. 23:632, together with legal interest thereon; accordingly, we remand this matter for determination and calculation of vacation time and penalty wages owed to Irma Ball, Louis Boudreaux, Thomas Harris, Mildred Haynes, Michelle Labit, Carlene O. LeMaire, Johnny Picard, and also to Stan Kasperski and Velton Vincent if their claims are found timely. Costs to be paid by Defendant.
REVERSED AND REMANDED.
NOTES
[1] In Knecht, the defendants tried to abolish a contractual policy which retroactively divested its employees of remuneration for overtime worked. The Knecht court held that the employees had a vested property right interest in the accrued compensatory time.
[2] Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94); 644 So.2d 619, 622, held "the amount then due under the terms of employment" set forth in La.R.S. 23:631 refers to wages which are "earned during a pay period."