799 So.2d 1197 (2001)
John H. WYATT
v.
AVOYELLES PARISH SCHOOL BOARD.
No. 01-531.
Court of Appeal of Louisiana, Third Circuit.
October 31, 2001.
*1199 Brian D. Cespiva, Alexandria, La, Attorney for Plaintiff/Appellee John H. Wyatt.
David Lafargue, Marksville, LA, Attorney for Defendant/Appellant Avoyelles Parish School Board.
Court composed of NED E. DOUCET, JR., Chief Judge, HENRY L. YELVERTON and GLENN B. GREMILLION, Judges.
DOUCET, Chief Judge.
The Avoyelles Parish School Board (APSB) appeals the trial court's judgment in these consolidated cases finding that it owes payment for accrued annual leave to several retired school employees.
The Plaintiffs/Appellants were all twelve month employees of the APSB. Upon retirement, the APSB denied them payment for accrued unused annual leave. They brought these consolidated suits to obtain payment. The APSB brought an exception of prescription which the trial court overruled. Ultimately, the trial court ruled in favor of the Plaintiffs/Appellants granting them payment for unused accrued annual leave and attorney's fees. The court further made awards of penalties to David Aymond, Wilbert Carmouche, James Best, Albin Lemoine, Jr., Tina McNeal, Keith Morrow, Lorraine Seiss, and John Wyatt.
The APSB appeals the trial court's ruling. John Wyatt, David Aymond, James K. Best, Wilbert Carmouche, Roy Dupont, Drusilla Goody, Albin Lemoine, Jr., Tena McNeal, Keith Morrow, Wilma Roy and Lorraine Seiss answered the appeal.

ACCRUAL OF ANNUAL LEAVE
Our first determination must be whether the Plaintiffs accrued annual leave for which they may be owed payment.
The APSB Handbook contains two provisions concerning annual leave. The first, enacted in 1974, provides as follows:

*1200 Administrative Personnel
Personal Leaves and Absences
Annual Leave
Annual leave for a full time school employee who has a regular tour of duty shall be set in accordance with Executive Order Number 56, 1-1-74, of the State of Louisiana. Annual leave shall be leave with pay granted an employee for the purpose of rehabilitation, restoration, and maintenance of work efficiency, or transaction of personal affairs.
The earning of such annual leave shall be based on the equivalent of years of full-time service and shall be creditable at the end of each calendar month in accordance with the following annual schedule.
Less than three years of service, at the rate of .0461 hour of annual leave for each hour of regular duty. (8 hours or one day per month)
Three years but less than five years of service, at the rate of .0576 hour of annual leave for each hour of regular duty. (10 hours or 1.25 days per month)
Five years but less than ten years of service, at the rate of .0692 hour of annual leave for each hour of regular duty. (12 hours or 1½ days per month)
Fifteen or more years of service, at the rate of .0923 hour of annual leave for each hour of regular duty. (16 hours or 2 days per month)
Annual leave must be taken within the calendar year and cannot be carried over to the next year. It shall be applied for by the employee and may be used only when approved by the Superintendent.
Employees shall work with the Director in arranging for annual leave.
The Director shall arrange leave schedules according to the desires of employees insofar as their department is not stripped of employees to the point that it would cripple the necessary work of that department. The Superintendent shall have final authority in designating which employees are entitled to what length annual leave and when such leave may be taken.
On August 18, 1981 the APSB amended the leave policy as follows:
ANNUAL LEAVECOMPENSATION
The Avoyelles Parish School Board agreed to amend the annual leave policy for full-time twelve month employees in a non-teaching position to allow these employees to be compensated for unused annual leave. Such compensation shall be figured on the basis of two days of wages at the employee's regular salary for every three days of annual leave which the employee does not use.
During 1982 payments were made under the new policy to certain employees. However, following an audit by the State of Louisiana's Legislative Auditor, the practice was discontinued pursuant to a report received from the legislative auditor stating that the practice was in conflict with the La.Const art. VII § 14 and several attorney general's opinions and should be discontinued. After 1982, the APSB implemented a "use or lose" policy with regard to annual leave. This policy was never committed to paper.
After considering the evidence with regard to the various leave policies used by the board, the trial court concluded that the policy actually used by the school board, except for the brief period during which payments were made for unused annual leave, was one in which leave earned during one fiscal year could not be used until after the beginning of the next fiscal year and that any leave not used would be lost.
*1201 La.R.S. 23:631 provides, in pertinent part:
A. (1) ... (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
. . . .
D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
In this case, as in the recent case of Picard v. Vermilion Parish School Bd., 98-1933 (La.App. 3 Cir. 6/23/99); 742 So.2d 589, writ denied, 99-2197 (La.11/19/99); 749 So.2d 675, the annual leave policy actually applied to differed from the written policy. However, the Picard court in reaching its conclusions looked to written policy.
This court in Picard, 98-1933, p. 12; 742 So.2d at 595-96, after analyzing this statute and the interpreting jurisprudence stated that:
We now hold that in the absence of a clear, written policy establishing that vacation time granted by an employer to an employee is nothing more than a mere gratuity and not to be considered an amount due or a wage, accrued but unused vacation time is a vested right for which an employee must be compensated upon discharge or resignation.
In this case as in Picard, "leave is based on years of continuous service and determined by a monthly calculation." Id. at p. 11; 742 So.2d at 595. The court in Picard found that this suggested that the "leave is earned, therefore vested, at the completion of each month." Id. Although the written policies before the court in this case do not, as in Picard, provide for the carry-over of vacation days from one year to the next, neither do they provide that "vacation time granted by an employer to an employee is nothing more than a mere gratuity and not to be considered an amount due or a wage."
Therefore, we agree with the Picard court in its finding that:
[I]n light of the long line of jurisprudence deeming vacation time an "amount then due under the terms of employment" or "wages" within the meaning of La.R.S. 23:631 and La.R.S. 23:634 respectively, and with a view for the disfavor surrounding wage forfeiture under our law, ... Plaintiffs had a vested right in their accrued, unused vacation time.... We find Plaintiffs' rights in vacation time vested upon completion of each month interval of employment.
Id. at p. 12; 742 So.2d at 596.
Further, neither the 1974 written leave policy nor the 1981 amendment clearly provides that leave is a mere gratuity and not an amount due, the Plaintiffs accrued annual leave from year to year. In the absence of such clear language, the APSB's attempt to divest the employees of annual leave not used at the end of each year is invalid.

*1202 PRESCRIPTION
We must next determine whether, as urged by the Defendant, the Plaintiffs' claims have prescribed.
The parties agree that the applicable prescriptive period is provided in La. Civ.Code art. 3494, which states, in pertinent part, that: "The following actions are subject to a liberative prescription of three years: (1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board." The Defendant, however, argues that prescription began to run at the end of each fiscal year as the claims were exigible on that date. They cite La.Civ. Code art. 3495 and its comments as follows: "This prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services."
The revision comments to this article provide in Subsection (b) that: "(b) On principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible. .... Liberative prescription begins to run as soon as the action accrues, or, as Pothier said `the day on which the creditor could institute his demand.'"
The record, however, supports the conclusion that no claim for accrued annual leave would have been viable prior to retirement. The trial court found, and we agree, with regard to the Plaintiffs' claims for unused leave, prescription began to run only at the time of the employees separation from service or, in this case, retirement. Therefore, prescription did not begin to run until that time.
The Defendant further argues that even if prescription did not begin to run until retirement, prescription had run as to Albin Lemoine, Jr.'s claim because from 1994 through 1998 he was superintendent of the Avoyelles Parish Schools. However, the Defendant does not point to any evidence which supports the conclusion that payment for his accrued annual leave was exigible prior to his retirement. Therefore, we conclude that the trial court correctly found that Lemoine's claim had not prescribed.

BASIS FOR AMOUNT OF PAYMENTS
The Defendant next argues that the trial court erred in finding that the award for accrued annual leave should be based on the salary at the time of retirement rather than at the time it was earned.
While this argument seems credible at first glance, it loses its persuasiveness when one considers that had the Plaintiffs chosen to use their leave in their last year of employment they would have, in effect, been receiving payment at their then current rate of pay. In light of this, we find no error in the trial court's determination that the award for unused leave should be based on each Plaintiff's salary at the time of retirement.

PAYMENT DUE
The Defendant argues that the record does not contain sufficient evidence of the days due to make an award. The Plaintiffs, in their answers to the appeal, argue that the trial court erred in failing to award any time accrued prior to 1982 and in its count of days due after that time.

Lemoine
Plaintiff Lemoine further asserts that the trial court erred in failing to give him credit for 93.5 days of unused annual leave where the Defendant admitted that Lemoine was owed that amount in answers to requests for admissions and where he moved for judgment on the pleadings on that basis. We find that Lemoine should *1203 have been given credit for these days. La.Code Civ.P. art. 1468 provides with regard to answers to requests for admissions, in pertinent part, that: "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Since the APSB admitted that Lemoine had 93.5 days of annual leave, this is conclusively established and the award should be based on this figure. Therefore, the judgment must be amended to reflect that Lemoine is owed payment for 93.5 accrued days of unused annual leave. The award made to Drusilla Goody was similarly based on an admission of fact by the Defendant and will not be disturbed on appeal.

Sufficiency of the Evidence as to Days Owed
The Defendant argues that the evidence of record is insufficient to determine the number of days of leave due to the Plaintiffs. The remaining Plaintiffs argue that the trial court misinterpreted the records and as a result made inadequate awards. We note that the determination of the number of days accrued by the remaining Plaintiffs/Appellees, John Wyatt, David Aymond, James K. Best, Wilbert Carmouche, Roy Dupont, Tena McNeal, Keith Morrow, Wilma Roy and Lorraine Seiss, is a question of fact. Therefore, it will not be reversed absent an abuse of discretion. After reviewing the records before this court, and in light of the reasons given by the trial court for its awards, we find no abuse of discretion. The awards made are supported by the record.

PENALTIES

John Wyatt, Keith Morrow, James Best, Drusilla Goody, Roy Dupont and Albin Lemoine
The Defendant argues that the trial court erroneously awarded penalties to John Wyatt, Keith Morrow, James Best, Drusilla Goody, Roy Dupont and Albin Lemoine. La.R.S. 23:632 provides in pertinent part that:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
The Plaintiffs' burden of proof in connection with a penalty wage claim has been articulated as follows:
To recover penalty wages, the claimant must show that (1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand. Winkle v. Advance Products & Systems, 98-694 (La.App. 3d Cir.10/28/98), 721 So.2d 983, 990.
Richard v. Vidrine Automotive Services, Inc., 98-1020, p. 6 (La.App. 1 Cir. 4/1/99); 729 So.2d 1174, 1177. The Defendant does not argue that the Plaintiffs have failed in any of these requirements. The Defendant appears to argue that it had a reasonable basis for failing to pay timely. "`[A] good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability' permits the court to excuse the employer from the imposition of additional penalty wages." Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, 97-1784, p. 7 (La.3/4/98); 707 So.2d 1233, 1236.
We note that the APSB may not cite its reliance on its written or oral policy as justification for its failure to pay. In Beard, 97-1784 at p. 9; 707 So.2d 1237, the supreme court found that "Reliance on an *1204 unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages." See also Picard, 98-1933; 742 So.2d 589. The trial court found that the Defendant acted unreasonably in failing to make an unconditional tender after being advised to do so by counsel. The Defendant states in brief that it made unconditional tenders to which the Plaintiffs did not respond. However, the Defendant does not make a citation to the record in support of this statement. We first note that arguments not supported by suitable references to the record need not be considered by this court. Uniform RulesCourts of Appeal, Rule 2-12.4. Additionally, our review of the record reveals no support for this contention.
The Defendant's primary argument in this regard is that the employees who were awarded penalties were administrative personnel because "these are the very persons who were required to know the policies of the Avoyelles Parish School Board and to keep those persons that they are immediately responsible for informed of said policies." They cite no authority for this position. We can find no authority for denying penalties to administrative personnel based on their positions. La. R.S. 23:632 makes no such distinction. Therefore, we find no error in the trial court's award of penalties.

Roy Dupont and Wilma Roy
Plaintiffs Roy Dupont and Wilma Roy argue that they are entitled to penalty wages since the tender made to them was not in the full amount owed. Where there is a dispute as to the amount due, penalty wages may be awarded where the Defendant's fail to pay the amount that is clearly due. See Duhon v. Prof Erny's Music Co., Inc., 328 So.2d 788 (La.App. 3 Cir.1976). However, in this case the amount due these employees was in dispute. The Defendant made an offer to pay the amount clearly due, which was rejected. Therefore, we cannot say the trial court erred in denying penalty wages to these Plaintiffs.

ATTORNEY'S FEES ON APPEAL
Plaintiff John Wyatt answers the appeal asking for additional attorney's fees on appeal. A party who has already been awarded attorney fees by trial court, and then successfully defends an appeal, an increase in attorney fees should be awarded. Sam v. Jhane Home Health Care Services, Inc., 95-0081 (La.App. 4 Cir. 6/7/95); 657 So.2d 559. Accordingly, we award additional attorney's fees to Wyatt in the amount of $2,500.00.

CONCLUSION
The judgment of the trial court is affirmed insofar as it ruled that the Plaintiffs'/Appellees' claims did not prescribe and that they are due payment for any accrued annual leave unused at the dates of their retirements at their rates of pay as of that date. Further, the awards of penalty wages are affirmed. The award to Albin Lemoine, Jr. is amended to conform to the admission of fact made by the Defendant to show that he is owed accrued unused annual leave of 93.5 days. The award made to Drusilla Goody is affirmed in that it too is based on an admission of fact by the Defendant. The awards for accrued unused leave made to the remaining Plaintiffs/Appellees are affirmed. Plaintiff John Wyatt is awarded an additional attorney's fee on appeal of $2,500.00. Costs of this appeal are to be paid 75% by the Defendant/Appellant and 25% by the Plaintiffs/Appellees.
AFFIRMED AS AMENDED.